IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1394

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOMMY ROSS ANDERSON, SARAH JANE ANDERSON,
JERRY WAYNE TILLEY, AND SUSAN WELLS TILLEY,

Defendants-Appellees.

_____

Appeals from the United States District Court for the
Northern District of Texas

_____

( March 25, 1994 )

Before JOHNSON, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:


In this appeal, the defendants seek dismissal of their criminal indictment for selling illegal drugs on grounds of double jeopardy. They argue that the prior civil forfeiture of the proceeds from these drug sales constitutes punishment for the crimes charged in the indictment and that the Double Jeopardy Clause precludes a second punishment. The district court, refusing to buy into the defendants' double jeopardy argument, denied their motion to dismiss the indictment. The defendants then filed this interlocutory appeal. Because we hold that the forfeiture of

unlawful proceeds of illegal drug sales does not constitute punishment, we affirm the district court.

I

In 1990, the Drug Enforcement Agency, and other authorities, began an investigation of large-scale activities involved in this case, which had yielded millions of dollars in drug proceeds. On July 25, 1991, the government filed a complaint for civil forfeiture in rem against certain personal and real property belonging to the defendants pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7).[1] On October 8, 1992, the government issued a criminal

---

[1]The relevant subsections provide in part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . .

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter . . . .

21 U.S.C. §§ 881(a)(6) and (a)(7) (1988).

The government alleged that the personal property forfeited was either the cash proceeds of drug sales or traceable to those proceeds.

-2-

indictment charging the defendants for the various drug crimes committed from 1986 to 1991. On February 5, 1993, the four defendants in this case entered into a stipulated forfeiture agreement with the United States. They agreed to forfeit significant amounts of cash, certificates of deposit, automobiles, and other personal property with a total value of approximately $650,000. Based on the stipulated agreements, the district court, on February 8, entered final judgment of forfeiture with respect to the personal property; however, the court stayed forfeiture proceedings with respect to defendants' two homes pending outcome of the criminal trial.[2] On April 7, the defendants filed a motion to dismiss the indictment on grounds that they were being subjected to multiple punishments for the same crimes in violation of the Double Jeopardy Clause. The defendants argued that they had already been "punished" for the same drug trafficking in the civil forfeiture proceeding. The district court rejected the argument

---

[2]The final order of forfeiture did not specify whether the cash, securities, and other personal property constituted proceeds of illegal activities or personal property used in drug trafficking. The complaint sought forfeiture under 21 U.S.C. § 881(a)(6) of proceeds and property traceable to proceeds of illegal drug sales, and under § 881(a)(7) of real property used to facilitate drug trafficking. By arguing on appeal that the personal property forfeited was the proceeds of illegal drug trafficking or directly traceable thereto, the defendants have waived any argument that the forfeited property was anything but proceeds. See In the Matter of Texas Mortgage Servs. Corp., 761 F.2d 1068, 1073-74 (5th Cir. 1985).

and denied the motion.[3]  The defendants then filed this interlocutory appeal pursuant to Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

                                II

The Double Jeopardy Clause prohibits more than one "punishment" for the same offense.[4]  North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).  The pending criminal trial in this case, if it results in a conviction, would, of course, subject the defendants to punishment.  Thus, if the prior civil forfeiture proceeding, which was predicated on the same drug trafficking offenses as charged in the indictment, constituted a "punishment," the Double Jeopardy Clause will bar the pending criminal trial.[5]

The Supreme Court has classified a civil sanction for wrongful conduct as a "punishment" under the Double Jeopardy Clause when the sanction served a traditional goal of punishment, that is, deterrence or retribution, instead of the remedial goal of

---

[3]The district court ruled without the benefit of the Supreme Court's subsequent decision in Austin v. United States, ___ U.S. ___, 113 S.Ct. 2801, 122 L.Ed.2d 347 (1993).

[4]U.S. Const. amend V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . .").

[5]Regardless of the order of the civil and criminal proceedings, the Double Jeopardy Clause will bar the second sanction if both the first and second sanctions are deemed punishment.  United States v. Sanchez-Escareno, 950 F.2d 193, 200 (5th Cir. 1991), cert. denied, ___ U.S. ___, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992).

reimbursing the government and society for the costs that result from that wrongful conduct. United States v. Halper, 490 U.S. 435, 448-49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). In Halper, the Supreme Court established the analytical methodology that will guide our determination of whether the civil forfeiture of the proceeds from illegal drug sales in this case served a punitive purpose, or a wholly remedial purpose. As explained below, this methodology focuses on the relationship between the amount of the civil sanction and the amount required to serve the remedial purpose of reimbursing the costs incurred by the government and society as a result of the wrongful conduct. We should make clear, however, that the sanction in Halper did not involve the proceeds from the crimes charged and the fact that the property forfeited in today's case constitutes unlawful proceeds is crucial to our analysis.

In Halper, 490 U.S. at 437-39, 109 S.Ct. at 1896-97, the government secured the conviction of a defendant on sixty-five counts of violating the False Claims Act by submitting fraudulent medicare claims. His crimes, however, had only netted him $585 in excess payments from the government, and the district court estimated the government's costs at $16,000. Nevertheless, the government, in a separate civil action, sought to impose an additional penalty of $130,000. Halper argued that the civil penalty constituted a second punishment on him for the same wrongful acts for which he had been criminally convicted and thus

violated the Double Jeopardy Clause. Id. at 440, 109 S.Ct. at 1897. The Supreme Court reasoned that a government-imposed sanction, whether labelled as "criminal" or "civil," constituted punishment under the Double Jeopardy Clause if--and only if--the sanction, "as applied in the individual case serve[d] the goals of punishment," that is, retribution and deterrence, instead of only the traditional remedial purpose of reimbursing the government for the costs incurred because of the defendant's wrongful conduct. Id. at 448, 109 S.Ct. at 1899-1902 (emphasis added). The Court declined to determine whether a sanction is punitive by focusing on whether a defendant subjectively feels the "sting of punishment." Id. at 447, 109 S.Ct. 1901 n.7. Instead, the Halper Court examined the civil sanction in that case with a focus on whether it was so excessive that it was punitive. See id., 490 U.S. at 447, 109 S.Ct. 1902. The Court stated that a civil sanction constitutes criminal punishment only in the "rare case" in which the amount of the sanction is "overwhelmingly disproportionate" to the damages caused by the wrongful conduct and thus "bears no rational relation to the goal of compensating the government for its loss, but rather appears to qualify as `punishment' within the plain meaning of the word." Id. at 449, 109 S.Ct. at 1902 (emphasis added). The Court then remanded to the district court for a determination of the government's actual costs and an application of its rational relation test. Id. at 452, 109 S.Ct. at 1904.

In United States v. Ward, 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980), the Supreme Court made clear that the compensation of both the government and society are remedial goals that a civil sanction may serve. The Court stated that a sanction that bore "absolutely no correlation to any damages sustained by society or the cost of enforcing the law" would be criminal. Id.

Thus, under Halper, we must classify the civil forfeiture of the unlawful proceeds of illegal drug sales under § 881(a)(6) as a punishment under the Double Jeopardy Clause if, in this particular case, the amount of the proceeds forfeited was so great that it bore no rational relation to the costs incurred by the government and society resulting from the defendant's criminal conduct.

III

Unlike the fine imposed in Halper, the forfeiture of proceeds in this particular case is not so excessive as to render the relationship between the amount of the forfeiture and the resulting costs to the government and society irrational. The forfeiture of proceeds of illegal drug sales serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade when preventative efforts prove unsuccessful, lost productivity, etc. See One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972) (stating that forfeiture of

property under the customs laws serves remedial purpose by "provid[ing] a reasonable form of liquidated damages for violation of the inspection provisions [by] . . . reimburs[ing] the Government for investigation and enforcement expenses"); <u>Halper</u>, 490 U.S. at 444, 109 S.Ct. at 1900 (stating that costs of detection and investigation are remedial in nature); <u>Rex Trailer Co. v. United States</u>, 350 U.S. 148, 153-54, 76 S.Ct. 219, 222 & n.6, 100 L.Ed. 149 (1956) (recognizing market and societal costs resulting from wrongdoing and avoidance of unjust enrichment as remedial purposes); <u>Ward</u>, 448 U.S. at 254, 100 S.Ct. at 2644 (recognizing repayment of damages to society as remedial).

Although revenue from illegal drug sales and the cost to the government and society are incapable of exact measurement, a principle recognized in <u>Halper</u>, 490 U.S. at 449, 109 S.Ct. at 1902, the amount of illicit drug proceeds confiscated in this case do not appear to be excessive in comparison to the resulting governmental and societal costs. Various sources estimate that illegal drug sales produce approximately $80 to $100 billion per year while exacting $60 to $120 billion per year in costs to the government and society. <u>See</u>, <u>e.g.</u>, Martin Wolf, <u>Thinking About Drug Legislation</u>, THE FINANCIAL TIMES (London), Sept. 4, 1989, at I-19 (estimating drug revenues in the United States to approximate $80 billion per year); 134 CONG. REC. S15,630 (statement of Sen. Danforth) (estimating drug revenues at $100 billion per year and the costs to the government and society of drugs to total at least

$110 billion); Drug Abuse Costs to U.S. May Be 125 Billion Dollars--Study, Reuter Library Report, LEXIS, MAJPAP Library, Sept. 5, 1991 (estimating economic costs of drug abuse to range from $60.4 billion to $124.9 billion); see also Rex Trailer, 350 U.S. at 154, 76 S.Ct. at 222 (recognizing that intangible and immeasurable costs to the government are appropriate considerations in determining whether a sanction is remedial or punitive).[6] Clearly, the above overlapping estimates of proceeds and resulting costs are not "overwhelmingly disproportionate" on a national level and, we believe, indicate a rough proportionality between the $650,000 sanction and the resulting governmental and societal costs in this case.  Thus, if the drug dealers forfeited all the proceeds of their drug sales, the relationship between the amount of the proceeds and the resulting governmental and societal costs would not exhibit the excessive quality found Halper and would not be irrational for that reason.

Further, in this case, the defendants only forfeited a portion of the total proceeds that their large-scale drug operation produced over several years, i.e., the proceeds on hand at the time of seizure.  The amount of the forfeiture bears a direct relation to the specific drug sales that generated those proceeds, but fails

---

[6]The overlap of the ranges of estimated proceeds of illegal drug sales and resulting governmental and societal costs indicates a rough proportionality in this case in contrast to the overwhelmingly disproportionate relationship between the $130,000 fine and the $16,585 approximation of governmental costs in Halper, 490 U.S. at 437-39, 109 S.Ct. at 1896-97.

to compensate fully for the wrongs done from all the drug sales. Thus, instead of roughly approximating the resulting governmental and societal costs, the instant forfeiture failed to compensate fully for the wrongs done.

The Supreme Court's recent opinion in Austin v. United States, ___ U.S. ___, 113 S.Ct. 2801, 122 L.Ed.2d 347 (1993), does not affect our holding today. Austin, ___ U.S. at ___, 113 S.Ct. at 2803, dealt with whether forfeitures under §§ 881(a)(4)--conveyances, or means of transporting drugs such as automobiles--and (a)(7)--real estate used in drug transactions--constituted punishment under the Excessive Fines Clause. In distinguishing the civil forfeiture in One Lot Emerald Cut Stones, 409 U.S. at 237, 93 S.Ct. at 493--a double jeopardy case in which a forfeiture was held not to constitute punishment--the Austin Court, 113 S.Ct. at 2811-12, stated that the forfeitures of conveyances and real estate have no correlation to, or proportionality with, the costs incurred by the government and society because of the large and unpredictable variances in the values of real estate and conveyances in comparison to the harm inflicted upon government and society by the criminal act. Unlike the real estate forfeiture statute that can result in the confiscation of the most modest mobile home or the stateliest mansion, the forfeiture of drug proceeds will always be directly proportional amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon

-10-

government and society by the drug sale.  Thus, the logic of <u>Austin</u> is inapplicable to § 881(a)(6)--the forfeiture of drug proceeds.

IV

Even absent the rational relation test of <u>Halper</u>, we would nevertheless be required to hold that the forfeiture of the proceeds from illegal drug sales does not constitute punishment because of the implicit and underlying premise of the rational relation test: The nature of the forfeiture proceeding may constitute punishment because it involves the extraction of lawfully derived property from the forfeiting party. Indeed, under the common law, "property was a right derived from society which one lost [through forfeiture] by violating society's laws." 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *299, 4 <u>id.</u> at *382.

When, however, the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him. Unlike the $130,000 fine in <u>Halper</u>, 490 U.S. at 438, 109 S.Ct. at 1896, the forfeiture of approximately $650,000 of illegal proceeds does not punish the defendant because it exacts no price in liberty or lawfully derived property from him. The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity. <u>See generally</u>, <u>Lucas v. South Carolina Coastal Council</u>, ___ U.S.

___, ___, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992); <u>Penn Central Transp. Co. v. New York City</u>, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). In short, the wrongdoer has nothing, at least nothing to which the law entitles him, to lose from the possible confiscation of the proceeds from his criminal trade. Thus, we believe the forfeiture of proceeds from illegal drug sales is more closely akin to the seizure of the proceeds from the robbery of a federal bank than the seizure of lawfully derived real property. <u>See</u> <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 671, 626, 109 S.Ct. 2646, 2652-53, 105 L.Ed.2d 528 (1989) (stating that "the government does not violate the Sixth Amendment if it seizes . . . robbery proceeds, and refuses to permit the defendant to use them to pay for his defense . . ." because, "[t]he money, though in [the defendant's] possession, is not rightfully his"); <u>see</u> <u>also</u> <u>Rex Trailer</u>, 350 U.S. at 153, 76 S.Ct. at 222 n.6 (stating that civil sanction may serve to avoid unjust enrichment). Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment "within the plain meaning of the word." <u>Halper</u>, 490 U.S. at 449, 109 S.Ct. at 1902.

V

Accordingly, we AFFIRM the district court's denial of the defendants' motion to dismiss because the Double Jeopardy Clause does not bar the criminal prosecution of the defendants.

A F F I R M E D.