**Ivan DAWKINS Petitioner.**

v.

**UNITED STATES of America Respondent,**

**Crim. No. 3:93CR7–04.**

United States District Court, E.D. Virginia, Richmond Division.

April 19, 1995.

---

**2.** As evidenced by his dropping from the picture      when Vasallo ceased supplying him.

John G. Douglass and Howard C. Vick, Jr., Asst. U.S. Attys., for respondent.

David P. Baugh, Richmond, VA, for petitioner.

Ivan Dawkins, Estill, SC, pro se.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the motion.[1]

### I.

Petitioner was indicted, along with ten other defendants, in January, 1993. The multiple count indictment charged the defendants with various drug-related offenses. Petitioner was charged under Counts I and IV with conspiracy to distribute in excess of one kilogram of heroin and interstate travel in aid of racketeering. 21 U.S.C. § 846; 18 U.S.C. §§ 2 & 1952(a)(3). Petitioner initially pleaded not guilty to both charges, but entered a plea of guilty to Count I on April 5, 1993, the date of his trial. Petitioner was sentenced to ten years imprisonment.

During the conspiracy, Petitioner allegedly purchased, *inter alia,* two automobiles, a 1992 Lexus LS400 valued at $49,000.00 and a 1992 Nissan Pathfinder valued at $29,000.00. Pursuant to 21 U.S.C. § 881, the Government instituted administrative forfeiture proceedings against this property beginning in January, 1993. Both vehicles were forfeited as proceeds of illegal narcotics activity. 21 U.S.C. § 881(a)(6).[2] Petitioner was provided with a notice of seizure for each vehicle prior to pleading guilty, but the administrative forfeiture proceedings were not completed until after entry of the plea. Petitioner himself neither requested remission of the forfeitures nor contested them in court by filing a claim of ownership.[3]

---

1. The Court is mindful that the Petitioner is proceeding *pro se.* As a general rule, courts are required to construe *pro se* complaints liberally. *Gordon v. Leeke,* 574 F.2d 1147, 1151–52 (4th Cir.1978), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

2. The Lexus was also forfeited as property traceable to violations of the money laundering and structuring statutes. *See* 18 U.S.C. § 981(a)(1)(A); 18 U.S.C. § 1956; 31 U.S.C. § 5324.

3. The record reveals that Petitioner's stepmother, Anne Winston, filed a petition for remission with the Drug Enforcement Administration. *See* Petitioner's Resp. Mem., App. 3–7. Her petition was denied on November 30, 1993. *See* Petitioner's Motion, Ex. 4.

Petitioner now attempts to collaterally attack the forfeitures. In particular, he does not seek to vacate, set aside or correct his original sentence; rather, he seeks the return of the two automobiles or, in the alternative, compensation in the amount of $78,000.00. Petitioner argues that the forfeiture of the vehicles subsequent to his guilty plea violated his Fifth Amendment rights in that he has been twice put in jeopardy for the same offense.[4] In so arguing, petitioner relies on *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994).

The Government asserts that (1) this Court lacks jurisdiction over the subject matter of this claim; (2) *$405,089.23* should not be applied retroactively; (3) Petitioner was never placed in "jeopardy" in the civil action; (4) the forfeiture in this case does not rise to the level of "punishment;" and (5) the forfeiture action and the criminal proceedings involved different "offenses."

## II.

■ The Government raises several valid arguments. Because the first of these is sufficient to decide this matter without any consideration of the merits, however, it must first be addressed.

■ Section 2255 can be used by a federal prisoner to obtain release from unlawful imprisonment by challenging the validity of a federal criminal conviction, the corresponding sentence or both. In pertinent part, § 2255 provides that,

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. This statute, enacted in 1948, is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States,* 417 U.S. 333, 343, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974). Consequently, section 2255 ensures governmental accountability "to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Fay v. Noia,* 372 U.S. 391, 402, 83 S.Ct. 822, 829, 9 L.Ed.2d 837 (1963).

■ A facial reading of the statute, therefore, reveals that a federal court may only consider a § 2255 petition that challenges custody under a federal criminal conviction or sentence. Nowhere does the statute authorize collateral attacks on civil administrative forfeitures in an effort to secure the release of forfeited property or its cash equivalent. Indeed, a forfeiture under § 881(a) is a civil action concerning a res, not a criminal action involving an individual's liberty. *See United States v. Turner,* 933 F.2d 240, 245 (4th Cir.1991).

In the instant matter, Petitioner challenges the two vehicular forfeitures. These proceedings, however, were entirely civil in nature and had no cognizable impact on Petitioner's liberty; thus, the forfeitures fall outside the recognized scope of a § 2255 petition. Accordingly, the Court determines that subject matter jurisdiction over this matter is lacking and will dismiss Petitioner's motion.[5]

---

**4.** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution proscribes more than one "punishment" for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb ..." U.S. Const. amend V.

**5.** On the jurisdictional issue, Petitioner's reliance on *$405,089.23* is misplaced. In *$405,089.23,* the government *filed* a § 881 civil forfeiture action five days after the grand jury issued an indict-

ment in the related criminal case, and the defendants subsequently filed claims to the res. After the defendants were convicted of the criminal charges, the government moved for, and prevailed on, summary judgment in the forfeiture action. The defendants filed a direct appeal from the court's summary judgment with the United States Court of Appeals for the Ninth Circuit, which reversed the order of forfeiture on double jeopardy grounds. 33 F.3d at 1222. Thus, the procedural posture of *$405,089.23* differs entirely from the instant matter.

### III.

■ While Petitioner's motion will be dismissed for lack of jurisdiction, the Court nevertheless considers one issue raised in this matter.[6] Specifically, the Court addresses whether the civil forfeiture in this case was "punishment" for double jeopardy purposes.

As noted heretofore, Petitioner relies on the Ninth Circuit panel opinion in *$405,089.23* for the proposition that the forfeiture of the two vehicles was a subsequent jeopardy which violated his Fifth Amendment rights. In *$405,089.23*, the appellants were charged with various counts of conspiracy and money laundering. The Government also initiated a forfeiture action against several pieces of property as proceeds of illegal drug activity and as property involved in money laundering. Several months after convictions were obtained in the criminal prosecution, the district court granted the Government's motion for summary judgment in the forfeiture action. The Ninth Circuit reversed.

In reversing the forfeiture order, the *$405,089.23* court first concluded that the prosecution and the forfeiture action were separate proceedings. *$405,089.23*, 33 F.3d at 1218.[7] The panel then considered whether or not proceeds forfeitures under § 881(a)(6) constitute "punishment" for double jeopardy purposes by examining *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). From these cases, the court held that because § 881(a)(6) forfeitures do not "serve *solely* a remedial purpose," they are conclusively a form of "punishment" within the meaning of the Double Jeopardy Clause. *Id.* at 1222.

A review of the cases relied on in *$405,089.23* sheds additional light on the Ninth Circuit's decision. In *Halper*, the Supreme Court squarely addressed the question of when a civil penalty constitutes punishment for double jeopardy purposes. The defendant was convicted of filing false claims with the Government in the amount of $585.00. Costs to the Government were estimated at $16,000.00, yet the Government sought a civil penalty amounting to $130,000.00. The Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 448–49, 109 S.Ct. at 1901–02. On this basis, the Court concluded that it was the job of the trial court to determine whether a civil penalty is "punishment" by examining the proportionality of the sanction's value to the compensatory goal of the sanction. In the "rare case" where the correlation is "overwhelmingly disproportionate," the sanction may be considered punishment as there is "no ration-

---

**6.** The Court also notes that a legitimate question exists as to whether Petitioner was ever placed in jeopardy by the civil forfeitures. Specifically, despite receiving notices of seizure he personally neither sought a remission from the government nor challenged the forfeitures in court; thus, he was not a party to the forfeiture by his own choice. While Petitioner's stepmother, Ann Winston, filed a remission petition, the Court seriously questions whether the filing and subsequent denial of Ms. Winston's petition was sufficient to cure Petitioner's waiver and re-vest in him the right to assert a double jeopardy claim. *E.g.,* *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.1994) ("you can't have jeopardy without former jeopardy") (*citing United States v. Serfass*, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)); *United States v. Kenmish*, 869 F.Supp. 803 (S.D.Cal.1994) (because petitioner voluntarily chose not to be a party to civil forfeiture, culpability never determined and double jeopardy claim was thus waived) (*citing Unit-*ed States v. Scott, 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978)); *United States v. Walsh*, 873 F.Supp. 334, 337 (D.Ariz.1994) (same); *Crowder v. United States*, 874 F.Supp. 700, 703–04 (M.D.N.C.1994) (same).

**7.** Several other circuits disagree with this conclusion on the basis that the two actions involved the same underlying criminal conduct and were part of a "single, coordinated prosecution." *United States v. One Single Family Residence*, 13 F.3d 1493, 1499 (11th Cir.1994); *see also United States v. Millan*, 2 F.3d 17, 20 (2d Cir.1993). This rationale, however, may be called into question in light of the Supreme Court's recent pronouncement that a narcotics prosecution and a related civil action to impose a "drug tax" were not the same proceeding, but *"successive* proceedings." *Dept. of Rev. of Montana v. Kurth Ranch*, —— U.S. ——, —— n. 21, 114 S.Ct. 1937, 1947 n. 21, 128 L.Ed.2d·767 (1994).

al relation to the goal of compensating the Government for its loss." *Id.* at 449, 109 S.Ct. at 1902.

In *Austin*, the Court applied *Halper* in examining whether a forfeiture proceeding constituted "punishment" within the meaning of the Eighth's Amendment's Excessive Fines Clause. Austin was indicted on various drug charges and pleaded guilty to one count. The Government subsequently instituted a forfeiture action against a mobile home and an automobile body shop under 21 U.S.C. §§ 881(a)(4) & (7) on the basis that these items were used to "facilitate" the commission of the drug offenses. After losing at the trial court level and on direct appeal, Austin appealed to the Supreme Court.

The *Austin* Court first examined the history of forfeiture and concluded that statutory *in rem* forfeiture has historically been considered, at least in part, as serving the goals of deterrence and retribution. —— U.S. at ——, 113 S.Ct. at 2810. The Court then considered this historical understanding of forfeiture in combination with (1) the "clear focus" of the forfeiture statutes on the property owner's alleged wrongdoing and (2) the statutes' legislative history to reach the blanket conclusion that forfeiture under 21 U.S.C. §§ 881(a)(4) & (7) constitutes "punishment." In short, the Court determined that these two specific provisions could not be fairly described as "*solely . . . serv[ing] a remedial purpose.*" *Id.* at ——, 113 S.Ct. at 2812 (*quoting Halper*, 490 U.S. at 448, 109 S.Ct. at 1901).[8] On this basis, the Court held that instrumentality forfeitures are subject to the excessiveness limitation of the Eighth Amendment, yet declined to fashion a "multifactor test for determining whether a forfei-

ture is constitutionally 'excessive.'" —— U.S. at ——, 113 S.Ct. at 2813.

*Austin* thus stands for the proposition that the forfeiture of property used to *facilitate* criminal conduct (i.e., forfeitures of criminal instrumentalities under 21 U.S.C. §§ 881(a)(4) & (7)) is subject to the Eighth Amendment's Excessive Fines Clause. In contrast to *Austin*, the primary statutory provision in the instant matter, as well as in *$405,089.23*, involves forfeiture of the *proceeds* of criminal conduct. *See* 21 U.S.C. § 881(a)(6).

As stated above, the *$405,089.23* court concluded that § 881(a)(6) forfeitures are punishment for double jeopardy purposes. In apparent contrast, the Fourth Circuit has implied that forfeiture of proceeds may not so readily be considered punishment. In *United States v. Borromeo*, 995 F.2d 23 (4th Cir.1993), the court held that the Government must establish a "substantial connection" between the property sought to be forfeited under § 881(a)(6) and the criminal activity before summary judgment may be entered in its favor. *Id.* at 26. The court, however, did not mandate the application of *Halper's* proportionality analysis. However, on a motion for rehearing subsequent to *Austin*, the Fourth Circuit reaffirmed the "substantial connection" requirement, and concluded that *Austin* generally suggests the need for an inquiry into the correlation between the value of the forfeited proceeds and the amount needed to attain the remedial purposes of the forfeiture. *U.S. v. Borromeo*, 1 F.3d 219, 221 (4th Cir.1993). The court so held despite its concern that strict adherence to proportionality analysis may permit "one who successfully parlays his

---

8. *Halper* offers somewhat contradictory language. On one hand, the Court stated that

it follows that a civil sanction that cannot fairly be said *solely to serve a remedial purpose,* but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

490 U.S. at 448, 109 S.Ct. at 1901 (emphasis added). In the very next sentence, however, the Court stated:

We therefore hold that under the Double Jeopardy Clause a defendant who already has been

punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only as a deterrent or retribution.*

490 U.S. at 448–49, 109 S.Ct. at 1901–02 (emphasis added). Thus, one may inquire: Is a civil sanction "punishment" when it is characterized "*only* as a deterrent or retribution," or when it "fairly cannot be said *solely* to serve a remedial purpose?" The *Austin* Court apparently overlooked this inconsistency.

tainted dollar into a fortune ... to enjoy a windfall." *Id.*

*Borromeo* thus suggests that the Fourth Circuit will not automatically apply *Austin* to proceeds forfeitures. *Accord Crowder v. United States,* 874 F.Supp. 700, 704 (M.D.N.C.1994). Rather, the court implied that either an inquiry into the nature of proceeds forfeitures or the utilization of the *Halper* rational relation test (or both) is warranted in such cases. This approach was employed by the Fifth Circuit in *United States v. Tilley,* 18 F.3d 295 (5th Cir.1994). In this post-*Austin* case, the Government initially filed a civil forfeiture complaint against the defendants under 21 U.S.C. §§ 881(a)(6) & (7).[9] The defendants were then charged by indictment with various drug crimes. Several months later, defendants entered into a stipulated forfeiture agreement whereby they forfeited approximately $650,000.00 in property to the Government as proceeds of drug activity. The defendants then moved to dismiss the indictment on double jeopardy grounds. The district court denied the motion and the defendants sought interlocutory appeal.

In affirming the district court's order, the Fifth Circuit first determined that the *Halper* proportionality test is appropriate in proceeds forfeiture actions. In conducting this test, the court concluded that a forfeiture under § 881(a)(6) did not constitute punishment under the Double Jeopardy Clause because forfeiture of proceeds is "wholly remedial." 18 F.3d at 299. More particularly, the Fifth Circuit considered whether the value of the proceeds was proportionate to, and thus whether the proceeds bore a rational relationship to, the costs borne by both government and society. 18 F.3d at 298; *see United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980) (civil

sanctions may be fashioned to compensate both the community as well as the Government). In this vein, the court determined that on a national scale the revenue generated through illegal narcotics sales is sufficiently proportionate to the governmental and communal costs to satisfy *Halper* rationality. Moreover, while the court considered the proceeds forfeited by the *Tilley* defendants to be commensurate with their corresponding drug sales, it concluded that such proceeds were inadequate to compensate fully government and society. 18 F.3d at 299–300.[10]

The Fifth Circuit went even further however, holding that even without the benefit of *Halper's* rational relationship analysis it would conclude that forfeiture under § 881(a)(6) is not punishment. Specifically, the court first noted that *Halper* implies that forfeiture may be considered punishment when *"lawfully* derived" property is forfeited. 18 F.3d at 300 (emphasis added). Since drug proceeds are derived from *criminal* activity, the court continued, a forfeiting party has legal no right to such proceeds. *Id.*

> Consequently, instead of punishing the forfeiting party, the forfeiture of illegal proceeds, much like the confiscation of stolen money from a bank robber, merely places that party in the lawfully protected financial status quo that he enjoyed prior to launching his illegal scheme. This is not punishment "within the plain meaning of the word."

*Id.* (quoting *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902).[11]

In the absence of clear guidance from the Fourth Circuit, this Court is persuaded that the *Tilley* approach is preferable to that taken in *$405,089.23.* In particular, the Court disagrees with the *$405,089.23* court's mechanical application of *Austin.* While the

---

9. On appeal, the court determined that defendants had waived "any argument that the forfeited property was anything but proceeds" under 21 U.S.C. § 881(a)(6). *Tilley,* 18 F.3d at 297 n. 2.

10. The Fifth Circuit distinguished *Austin* on the rationale that, unlike instrumentality forfeitures, there is always proportionality between drug proceeds and the amount of narcotics. "The more drugs sold, the more proceeds that will be

forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale. Thus, the logic of *Austin* is inapplicable to § 881(a)(6)—the forfeiture of drug proceeds." *Tilley,* 18 F.3d at 300.

11. The *$405,089.23* court, on the other hand, suggested that proceeds forfeitures do more than merely restore the drug dealer's financial status quo. 33 F.3d at 1221.

*Austin* court set forth several relevant considerations for the "punishment" inquiry, it was also considering a very different type of forfeiture—that of *instrumentalities* of drug activity as opposed to the *proceeds* thereof. As noted in *Tilley,* the forfeiture of drug proceeds deprives a forfeiting party of nothing to which he is legally entitled. Rather, forfeiture under § 881(a)(6), by extracting the fruits of a drug dealer's illegal enterprise, ensures that he is not unjustly enriched at the expense of the Government and society as a whole. Indeed, unlike a forfeiture of real or personal property used to facilitate drug activity, which a defendant may have owned prior to his illegal scheme, a forfeiture of proceeds, by definition, leaves the drug dealer no worse off than when he embarked upon his criminal undertaking.

In such cases, therefore, a court should ask whether the sanction sought to be extracted is commensurate with the damages caused by the defendant. *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. Only then can it be determined whether the sanction imposed punishment. Applying this principle to the instant case reveals that Petitioner fails to demonstrate that the relationship between the forfeitures and the costs flowing from Petitioner's role in distributing heroin is irrational. The value of the forfeiture in this matter, according to Petitioner, is $78,000.00. On the other hand, the costs to the Government in detecting, investigating and prosecuting the subject conspiracy, while not quantified, undoubtedly far exceed this figure, and the costs to society are simply immeasurable. Thus, the forfeiture of proceeds in this case "failed to compensate fully for the wrongs done," and thus satisfies the *Halper* rational relation test. *Tilley,* 18 F.3d at 299. Accordingly, the Court determines that Petitioner was not "punished" by the administrative forfeitures.

## IV.

The Court will dismiss the petition for lack of subject matter jurisdiction. However, even if this Court had the power to consider Petitioner's motion, the result would not differ. To begin, the Court is inclined to agree with the *Tilley* court that the inherent nature

of drug sale proceeds indicates that forfeiture of such proceeds is not punishment within the meaning of the Double Jeopardy Clause. However, even if the Court decided that proceeds forfeiture can be considered punishment, the Court concludes that the *Halper* rational relationship test applies to such forfeitures and, further, that the instant forfeiture clearly passes that test.