**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
No. 94-5942

GERARD VALMORE BROWN, a/k/a
Blackie, a/k/a Gerald Kennedy,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
No. 94-5956

MELVIN SANDERS, a/k/a Pops,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
No. 94-5957

ANDRE SIMPSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CR-93-281)

Argued: December 8, 1995

Decided: January 31, 1996

Before WIDENER, WILKINSON, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** W. David Lloyd, LLOYD & LLOYD, Greensboro, North Carolina, for Appellant Sanders; Charles D. Luckey, BLANCO, TACKABERY, COMBS & MATAMOROS, P.A., Winston-Salem, North Carolina, for Appellant Brown; Louis Carr Allen, III, FLOYD, ALLEN & JACOBS, Greensboro, North Carolina, for Appellant Simpson. Robert Michael Hamilton, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Gill P. Beck, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gerard Valmore Brown, Melvin Sanders, and Andre Simpson raise numerous objections to their drug and money laundering convictions. Sanders contends that his criminal trial, which followed an administrative forfeiture of property, constituted double jeopardy. Defendants also object to various other rulings by the district court during voir dire, the trial, and sentencing. We affirm the judgment of the district court.

I.

On December 20, 1993, defendants Brown, Sanders, and Simpson were each charged with conspiring to distribute marijuana and cocaine. In addition, Brown and Sanders were charged with conspiracy to money launder, and Sanders was charged with money laundering. The evidence against the three included: the testimony of coconspirators, intercepted conversations, and proof of large expenditures typical of drug proceed laundering. On January 22, 1993, before the trial had commenced, defendant Sanders consented to the administrative forfeiture of various vehicles, jewelry, and $11,308 in cash in exchange for the return of a "Rolex-Diamond watch and matching diamond ring." Nowhere in this agreement did Sanders claim ownership of the forfeited property.

During jury selection, the government used two peremptory challenges against black jurors. The defendants objected on the grounds that the peremptory challenges constituted an attempt by the prosecution to exclude blacks from the jury. The government responded by pointing out that four black jurors had been seated and that the second peremptory challenge had been used to assist an engineering student who would have had to miss a significant number of classes had she served on the jury. The district court ultimately found no evidence of systematic racial exclusion, and the trial went forward, lasting two weeks.

At the trial's conclusion, defendant Sanders sought an instruction for the money laundering counts that would have directed the jury to return a guilty verdict only if the unlawful activity resulted from a conspiracy to distribute both marijuana and cocaine. As the laundered income had been generated by the sale of cocaine rather than marijuana, the court instead instructed the jury that it might find the defendant guilty based upon a conspiracy to distribute cocaine alone. On March 21, 1994, the defendants were convicted on all charges.

During sentencing, Simpson was represented by both his retained counsel, Thomas Taylor, and a court appointed counsel, Urs Gsteiger. While Simpson desired the withdrawal of Mr. Taylor, and then later, Mr. Gsteiger, the district court denied his motions. Simpson eventually received a sentence of 210 months, while Sanders and Brown

received 292 and 262 months, respectively. Sanders and Brown both received two-point enhancements under the Sentencing Guidelines for obstruction of justice based upon their false testimony at trial.

II.

A.

First, defendant Sanders contends that by virtue of the pre-trial administrative forfeiture of drug proceeds, his subsequent trial constituted double jeopardy. Sanders, however, never claimed an ownership interest in the forfeited assets. Absent a "claim in the forfeiture proceeding, we have no reason to believe that [a person] owned or had any interest" in the property. United States v. Torres, 28 F.3d 1463, 1465 (7th Cir. 1994), cert. denied, 115 S. Ct. 669 (1994). And if a person lacks any interest in seized property, "its forfeiture d[oes] not impose any penalty on him." Id. at 1466.

Here, Sanders' consent to forfeiture did not allege any ownership interest in the forfeited property. Instead, it was actually a waiver of any ownership interest in the seized property. Indeed, both the government and Sanders benefited from this agreement. The government was able to avoid litigation, and Sanders was allowed to keep a "Rolex-Diamond watch and matching diamond ring," which he stood to lose had he laid claim to the property. As Sanders never actually claimed ownership and even waived his opportunity to do so in the future, no penalty was imposed upon him by the property's seizure.

Even had Sanders contested the administrative forfeiture of his assets, double jeopardy would not have existed because forfeiture of drug proceeds is not necessarily a "punishment." United States v. Tilley, 18 F.3d 295, 298 (5th Cir. 1994), cert. denied, 115 S. Ct. 574 (1994). Civil sanctions for wrongful conduct are considered a punishment under the Double Jeopardy Clause only "when the sanction serve[s] a traditional goal of punishment, that is, deterrence or retribution, instead of the remedial goal of reimbursing the government and society for the costs that result from that wrongful conduct." Id., citing United States v. Halper, 490 U.S. 435, 448-49 (1989); see also United States v. Cullen, 979 F.2d 992, 994-95 (4th Cir. 1992). As "the forfeiture of proceeds of illegal drug sales serves the wholly

4

remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade . . . lost productivity, etc.," it is not "punishment" within the meaning of the Double Jeopardy Clause. Tilley, 18 F.3d at 299-300.*

B.

Defendants also allege that the government's use of peremptory challenges against two black jurors amounted to racial discrimination. To establish such a case, "the defendant must show that [the] facts and any other relevant circumstances raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the [ ] jury on account of their race." Batson v. Kentucky, 476 U.S. 79, 96 (1986). Batson explained that "a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." Id. at 97.

Here, the district court questioned the prosecutor, observed his demeanor, and ultimately found no such evidence of a pattern of racial exclusion. We see no reason to overturn this ruling. The government attorney challenged only two of six black venire members despite having a sufficient number of challenges to exclude others. Moreover, the government offered a racially-neutral explanation for its second peremptory challenge, namely that the challenged juror was an engineering student who would have missed numerous classes had she served on the jury. Because such circumstances indicate an absence of racial exclusion, they "weigh[ ] heavily in support of the district court finding of no discrimination." United States v. Lane, 866 F.2d 103, 106 (4th Cir. 1989). We thus reject defendants' Batson challenge.

_____

*We are aware that the Supreme Court has granted certiorari in two similar cases, United States v. Ursery, 59 F.3d 568 (6th Cir. 1995), and United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994). See United States Currency, 64 U.S.L.W. 3161 (U.S., Jan. 12, 1996). In both those cases, however, the defendants fought the forfeiture actions in court. Here, defendant Sanders never claimed ownership to the property that was eventually forfeited.

C.

Defendant Sanders also contests the district court's denial of his proposed jury charge, which would have instructed the jury to find Sanders guilty of money laundering only if he had conspired to launder proceeds from the sale of <u>both</u> cocaine and marijuana. The evidence at trial, however, indicated that it was the proceeds from cocaine sales that defendants sought to launder. Moreover, Sanders' requested jury charge was simply contrary to law. The statute in question, 18 U.S.C. § 1956, merely requires a finding of <u>any</u> one of several specified unlawful activities. Sanders' laundering of cocaine proceeds suffices to fulfill this requirement.

D.

Next, Simpson objects to the district court's refusal to remove his attorneys during his sentencing. There was, however, no evidence of any conflict of interest on the part of Simpson's counsel, and Simpson was in fact represented by not one, but two attorneys, throughout his sentencing proceedings. While Simpson alleges that his attorneys failed to "deal with [his] medical problems at sentencing," i.e. by not obtaining a downward departure under the Sentencing Guidelines for his poor health, the evidence from Simpson's most recent medical exam indicated that Simpson was ineligible for such a departure. In short, the trial court did not err in denying Simpson's motion.

E.

Finally, defendants Brown and Sanders contest the district court's enhancement of their sentences for obstruction of justice under the Sentencing Guidelines. Section 3C1.1 of the Sentencing Guidelines explains: "If the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Given the overwhelming weight of evidence against Sanders and Brown, including wiretap conversations of their illegal activities, we think that the district court was correct in concluding that their contrary testimony constituted obstruction of justice pursuant to the Sentencing Guidelines. <u>See</u> <u>United States v. Dunnigan</u>, 113 S. Ct. 1111 (1993).

6

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

7