94 F.3d 645
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
LAND CONTRACT VENDEE'S INTEREST IN REAL PROPERTY LOCATED AT
10616 OAKLAND DRIVE, PORTAGE, KALAMAZOO COUNTY,
MICHIGAN, Together With All
Improvements, Fixtures, and
Appurtenances
Thereon, Defendant;
David Erle Porter, Claimant-Appellant.
 No. 95-1550.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1996.
 
 1
 Before: BROWN and SILER, Circuit Judges; HOOD, District Judge.*
 
 
 2
 HOOD, District Judge.
 
 
 3
 Claimant David Erle Porter (Porter) appeals the district court's entry of default judgment in favor of the United States (referred to hereinafter as the government), resulting in the forfeiture of Porter's land contract vendee's interest (equity interest) in the defendant property, 10616 Oakland Drive, pursuant to 21 U.S.C. § 881(a)(6) and (a)(7). Porter had previously entered a plea of guilty to the felony of possession with intent to distribute more than 100 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).
 
 
 4
 On appeal, Porter contends that the judgment below violated his rights under the Due Process Clause of the Fifth Amendment, as well as his rights under the Excessive Fines Clause of the Eighth Amendment. For the reasons that follow, we AFFIRM the judgment of the district court.
 
 I. BACKGROUND
 
 5
 In May 1994, the government conducted an investigation of Porter's activities at 10616 Oakland Drive. Porter was believed to be using the property to facilitate the storage, sale, and distribution of methamphetamine. On several occasions in May, Porter discussed and arranged the sale of methamphetamine to a confidential informant, working for the government. On May 12, Porter delivered five ounces of methamphetamine to the confidential informant who later paid $1500 cash to Porter.
 
 
 6
 On May 27, 1994, a federal search warrant was executed at 10616 Oakland Drive. The search uncovered approximately one pound of methamphetamine, $2,636.00 cash, a triple beam scale, and a police scanner. Pursuant to 21 U.S.C. § 881(a)(6), the $2,636.00 cash was forfeited as proceeds of a drug transaction. Porter did not contest this forfeiture.
 
 
 7
 Porter was subsequently indicted for possession with intent to distribute over 100 grams of methamphetamine in violation of 21 U.S.C. § 841(a). The government and Porter eventually came to a plea agreement. The sentencing court accepted Porter's guilty plea and sentenced Porter to 120 months incarceration, a four-year term of supervised release, and a $50 special assessment.
 
 
 8
 Based on Porter's reported financial situation, the government concluded that Porter lacked a sufficient source of legitimate income to account for the land contract interest and that the 10616 Oakland Drive property was thus forfeitable under 21 U.S.C. § 881(a)(6) as "proceeds traceable to" drug transactions. The government also relied upon 21 U.S.C. § 881(a)(7) which provides for the forfeiture of any real property used "to facilitate the commission of" drug trafficking. On December 1, 1994, pursuant to §§ 881(a)(6) and 881(a)(7), the government filed a verified complaint seeking forfeiture of Porter's equity interest in the real property at 10616 Oakland Drive.
 
 
 9
 Attached to the government's complaint, the affidavit of an FBI agent provided the probable cause to connect the defendant property to Porter's drug trafficking. In addition, the government provided the tax returns filed by Porter from 1987 to 1992 to show that 10616 Oakland Drive was subject to forfeiture. Porter reported gross incomes of $30,310.00 in 1987, $23,798.83 in 1988, $33,412.00 in 1989, $0.00 in 1990, $6,360.00 in 1991, and $9,996.00 in 1992. The government cited these figures to support its contention that Porter and his wife, Kimberly, lacked sufficient legitimate income: 1) to acquire a $10,000 equity interest in 10616 Oakland Drive in 1994; and 2) to amass $2,636.00 cash in May 1994. On this basis, the complaint alleged that the equity interest in 10616 Oakland Drive was purchased with proceeds from drug sales.
 
 
 10
 Pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims,[1] a warrant for arrest in rem was executed on December 13, 1994. On December 23, the government sent copies of its complaint, the warrant for arrest in rem, and the notice of forfeiture action to Porter who was incarcerated at FCI Milan.[2] On January 11, 1995, Porter filed a verified claim of ownership deriving from his equity interest in 10616 Oakland Drive. Eventually, Kimberly Porter also filed an ownership claim in the defendant property.
 
 
 11
 Porter was also required to file an answer to the government's complaint within twenty days after filing his claim, which requirement he acknowledged in a letter attached to his claim. Instead of filing an answer, however, Porter filed a motion to dismiss the complaint on February 2, 1995. The government moved to dismiss both Kimberly Porter's and Porter's claims as being untimely. Porter's motion to dismiss the complaint was denied by a district court order of March 24. On that same date, the district court issued another order which granted the government's motion to dismiss Kimberly Porter's ownership claim for failure to timely file, but the district court found Porter's claim was timely filed under the inmate "mail-box rule." See Houston v. Lack, 487 U.S. 266, 276 (1988). The district court then issued a case management order, scheduling a bench trial for November 1995.
 
 
 12
 Porter's new deadline to file an answer was April 10, 1995, ten days after Porter received notice of the district court's order denying his motion to dismiss the complaint. FED.R.CIV.P. 12(a)(4)(A). Porter claims that he did not receive notice of the district court's March 24 order until "well after" the April 10 deadline. Irrespective of when Porter received notice of the district court's order, he never filed an answer to the government's complaint.
 
 
 13
 On April 25, 1995, the government requested the district court clerk to enter a default against Porter, which was done the next day. On May 8, 1995, the district court entered a default judgment of forfeiture. Porter did not attempt to have the default or default judgment set aside under FED.R.CIV.P. 55(c) or 60(b) but rather appealed directly to this court. Pursuing this appeal pro se, Porter claims that his Due Process rights under the Fifth Amendment were violated by the district court's entry of default judgment. Porter also argues that the forfeiture of 10616 Oakland Drive violates the Excessive Fines Clause of the Eighth Amendment.[3]
 
 II. ANALYSIS
 
 14
 A. Due Process Clause of the Fifth Amendment
 
 
 15
 Porter does not contend that grounds exist upon which the district court should have set aside the entry of the default judgment. See Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 209 (6th Cir.1995) (setting forth the factors necessary to grant relief from a default judgment). Indeed, Porter never sought such relief from the district court choosing instead to pursue this appeal. Porter maintains, rather, that the district court's entry of a default judgment against him violated his right to due process under the Fifth Amendment. In sum, Porter predicates this claim on a combination of the brief time period in which to respond, the delays attributable to his incarceration including the asserted inefficiency of the mailroom, his inability to refute the government's charges and confront its witnesses, and his lack of an opportunity to challenge the forfeiture.
 
 
 16
 The right to procedural due process where life, liberty, or property is at stake is guaranteed by the Fifth and Fourteenth Amendments. In the matter at hand, there is no question but that Porter's property interests were at stake and that, therefore, he was entitled to fair procedure. The issue here is whether the process afforded comports with that which was due. We review questions of constitutional law de novo and any underlying findings of fact are reviewed for clear error. Weaver v. University of Cincinnati, 942 F.2d 1039, 1043 (6th Cir.1991); accord United States v. Ursery, 59 F.3d 568, 570 (6th Cir.1995), cert. granted, 116 S.Ct. 762 (1996).
 
 
 17
 The hallmark of procedural due process is notice and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.").
 
 
 18
 In the matter at hand, it is clear that Porter had actual notice and a means by which to be heard. As to notice, the record reveals that on at least two separate occasions Porter was notified of the necessity of filing an answer to the government's forfeiture complaint as required by Rule C(6) of the Supplemental Rules for Admiralty and Maritime Claims which govern such proceedings. 21 U.S.C. § 881(b). On December 23, 1994, the government sent to Porter via certified mail various documents including a notice informing him of the requirement that a verified claim be filed within ten days after process has been executed and of the requirement that an answer to the complaint be filed within twenty days after the claim has been filed. On March 24, 1995, during a telephone scheduling conference with the magistrate judge and government attorneys Porter was again told of the necessity of filing an answer. There can be no question as to Porter's awareness of this requirement as he himself stated in a letter to the Clerk of Court that within twenty days of filing his claim he would file an answer to the complaint.
 
 
 19
 The procedure by which a claimant has an opportunity to be heard is governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. See 21 U.S.C. § 881(b). Supplemental Rule C, in particular, sets forth the procedural rules which are to be followed in actions in rem. Under Supplemental Rule C(6) a claimant must file a verified claim within ten days after process has been executed (subject to enlargement by the court) and must serve an answer within twenty days after the filing of the claim. A claimant must strictly comply with the procedural strictures of Rule C(6). United States v. One Assortment of Eighty-Nine Firearms, 846 F.2d 24, 26 (6th Cir.1988).
 
 
 20
 These procedural rules provide the very means by which a claimant may be heard and provided Porter with a constitutionally sufficient opportunity to be heard. The fact that, despite having actual knowledge of these requirements, Porter failed to ever file an answer reflects his relinquishment of the established procedural mechanism by which he may have voiced and pursued his claim.
 
 
 21
 In light of the foregoing, we find all the process that was constitutionally due, notice and an opportunity to be heard, was afforded.
 
 
 22
 B. Excessive Fines Clause of the Eighth Amendment
 
 
 23
 The government advanced two independent bases as grounds for forfeiture of Porter's $10,000 equity interest. First, the government alleged that the interest was forfeitable as property traceable to an illegal drug transaction pursuant to 21 U.S.C. § 881(a)(6) (the proceeds section). Second, the government claimed that the interest was forfeitable as an interest in real estate used to facilitate a felony drug offense pursuant to 21 U.S.C. § 881(a)(7) (the facilitating section). The government established probable cause to achieve forfeiture under either of these sections and Porter made no effort to rebut these showings of probable cause. Even so, given the procedural course of this matter, it is unclear whether the proceeds section, the facilitating section or both served as the basis for the default judgment of forfeiture in the district court.
 
 
 24
 In Austin v. United States, 113 S.Ct. 2801 (1993), the Court established one leg of the analytical framework applicable here. Austin establishes that forfeitures under the facilitating section and § 881(a)(4) (conveyances or means of transporting drugs) constitute punishment under the Excessive Fines Clause of the Eighth Amendment and are, therefore, subject to the limitations of such clause. Austin did not, however, deal with forfeitures under the proceeds section.
 
 
 25
 This court has had occasion to address how a forfeiture under the proceeds section fits within the constitutional framework. In United States v. Salinas, 65 F.3d 551 (6th Cir.1995), we adopted the view set forth in United States v. Tilley, 18 F.3d 295 (5th Cir.), cert. denied, 115 S.Ct. 573 (1994), that forfeiture of drug proceeds is fundamentally different from forfeiture of conveyances or other facilitating property. "Not only are drug proceeds inherently proportional to the damages caused by the illegal activity ... but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity." Salinas, 65 F.3d at 554. Based on this fundamental difference, forfeiture of drug proceeds is not punishment, but rather is remedial, and therefore is not subject to the limitations of the Double Jeopardy Clause. Id.
 
 
 26
 Although Salinas dealt with punishment under the Double Jeopardy Clause, the same understanding of punishment informs the limitations established by the Excessive Fines Clause. Four other circuits are in accord with Salinas[4] with only the Ninth circuit reaching the opposite conclusion.[5] The Supreme Court having granted certiorari in United States v. Ursery, 116 S.Ct. 762 (1996), it presumably will resolve this disagreement among the circuits and speak on the issue of how the proceeds section of 881(a)(6) fits within the framework established by Austin. In the meantime, we are bound by the controlling decisions of this circuit and thus to the extent that the forfeiture here was based on the proceeds section, Salinas concludes our inquiry by rendering inapplicable the limitations of the Excessive Fines Clause.
 
 
 27
 Even assuming, arguendo, that the forfeiture was predicated on the facilitating section, we conclude that the forfeiture was not excessive. Approximately one pound of methamphetamine, $2,363.00 in cash, a triple beam scale and a police scanner were all found at the 10616 Oakland Drive residence. All of these items indicate a significant trade. In view of the nature of Porter's activities and the extent of his unlawful activities, we find that the forfeiture of his $10,000.00 equity interest is not grossly disproportionate or unconstitutionally harsh. United States v. Certain Real Property 556 Hendrickson Boulevard, 986 F.2d 990, 999 (6th Cir.1993) (citation omitted).
 
 III. CONCLUSION
 
 28
 As Porter had both notice of and an opportunity to file an answer to the government's forfeiture complaint, we find the requirements of procedural due process were satisfied. If the default judgment of forfeiture is taken as predicated on the proceeds section, Salinas holds that the forfeiture does not constitute punishment and thus does not implicate the Excessive Fines Clause. Even assuming that the forfeiture was based on the facilitating section and thus does constitute punishment in view of Austin, it was not grossly disproportionate or unconstitutionally harsh in violation of the Excessive Fines Clause.
 
 
 29
 In light of the foregoing, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The Supplemental Rules are applicable to in rem actions under 21 U.S.C. § 881(b). The Federal Rules of Civil Procedure are also applicable to these actions except to the extent they are inconsistent with the Supplemental Rules. SUPPLEMENTAL RULE A
 
 
 [2]
 An explanatory letter from the government notified Porter that he had ten days to file a claim of interest or ownership. It further notified him that he was required to file an answer within twenty days after filing his claim
 
 
 [3]
 In the district court Porter raised a question on double jeopardy but does not pursue that argument on appeal. We shall thus refrain from addressing that issue. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 503 U.S. 939 (1992)
 
 
 [4]
 United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160, 1168-69 (3rd Cir.1995); United States v. Wild, 47 F.3d 669, 676 (4th Cir.), cert. denied, 116 S.Ct. 128 (1995); United States v. Alexander, 32 F.3d 1231, 1236 (8th Cir.1994); United States v. Tilley, 18 F.3d 295, 300 (5th Cir.), cert. denied, 115 S.Ct. 574 (1994)
 
 
 [5]
 United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1219-22 (9th Cir.1994), cert. granted, 116 S.Ct. 762 (1996)