**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Ferris ALEXANDER, Defendant–
Appellant.**

**No. 90–5417.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 9, 1994.

Decided July 12, 1994.

---

John H. Weston, Beverly Hills, CA, argued (Michael McGlennen and Paul Engh, on the brief), for appellant.

Paul A. Murphy, Minneapolis, MN, argued (Mary E. Carlson, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Ferris Alexander's appeal comes before us again on remand from the United States Supreme Court to analyze, under the Eighth Amendment's prohibition of excessive fines, the forfeiture of Alexander's property pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963(a)(2)(A) and (D), § 1963(a)(1), (3). After briefing, oral argument, and careful study once again of the district court's forfeiture order, we consider it appropriate to remand to the district court for further proceedings.

In our earlier opinion in this case we affirmed both Alexander's conviction and the district court's forfeiture order brought under RICO, *see Alexander v. Thornburgh*, 943 F.2d 825, 827 (8th Cir.1991). We rejected Alexander's arguments that the forfeiture provisions contained in 18 U.S.C. § 1962 unconstitutionally criminalize nonobscene expressive material and violate the First Amendment. *Id.* at 832. We also rejected arguments that the forfeiture violated the cruel and unusual punishment and excessive fines clauses of the Constitution. *Id.* at 835–36.

In the Supreme Court, Alexander argued first that the forfeiture was a prior restraint on speech rather than a permissible criminal punishment, and was constitutionally overbroad because it was not limited solely to obscene materials and the proceeds from the sale of such materials. *Alexander v. United States,* —— U.S. ——, ——, ——, 113 S.Ct. 2766, 2770, 2774, 125 L.Ed.2d 441 (1993). The Supreme Court held that this court had lumped together the cruel and unusual punishment and excessive fines arguments, with the result that this court had not adequately considered whether the forfeiture violated the excessive fines clause. *Id.* at —— ——, 113 S.Ct. at 2775–76. The Court remanded the case with directions that we analyze the forfeiture under the excessive fines clause. *Id.* at ——, 113 S.Ct. at 2776. This statement of the Supreme Court is instructive:

> It is somewhat misleading, we think, to characterize the racketeering crimes for which petitioner was convicted as involving just a few materials ultimately found to be obscene. Petitioner was convicted of creating and managing what the District Court described as "an enormous racketeering enterprise." It is in the light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time that the question of whether or not the forfeiture was "excessive" must be considered.

*Id.* (internal citations omitted).

The parties now dispute whether a remand to the district court is necessary, and thus,

we briefly summarize the history of the forfeiture proceedings in the district court. Following Alexander's convictions, the district court submitted a portion of the forfeiture issue to the jury. After hearing additional evidence, the jury concluded that ten interests in commercial property and interests in businesses (wholesale business, bookstores, and theaters) owned or controlled by Alexander were forfeitable under 18 U.S.C. § 1963(a)(2) and that four pieces of commercial real estate were not forfeitable. The district court then held a second phase of forfeiture proceedings. In addition to relying on the testimony and exhibits introduced at trial, the government admitted some forty additional magazines and over 400 additional videos as further evidence of the extent of the racketeering activity and the relationship between the enterprise and the property and proceeds to be forfeited. Alexander did not offer additional evidence during this second phase of the bifurcated forfeiture proceeding.

The district court entered an order and judgment of forfeiture on August 6, 1990, and filed another order on August 13, 1990, detailing the court's reasons for the forfeiture. After affirming the jury verdict of forfeiture, the district court declared the ten commercial properties forfeited to the United States under 18 U.S.C. § 1963(a)(2). *United States v. Alexander,* No. 4-89-85, slip op. at 4-6, 1990 WL 117882 (D.Minn. Aug. 13, 1990). The court refused to order forfeiture of the four other commercial properties the jury determined should not be forfeited, rejecting the government's argument that they could be forfeited under section 1963(a)(1) or (a)(3). *Id.* at 5-6.

The district court then ordered personal property, equipment, and inventory forfeitable under either section 1963(a)(1) or (a)(3). *Id.* at 6. The court first found that the evidence at trial and in the forfeiture hearing established that Alexander acquired or maintained these items as part of the racketeering activity, and that much of the property was undoubtedly derived from proceeds of the ongoing enterprise. *Id.* at 6-7. The court reasoned that the personal property (including videocassette recorders, projectors, and furniture), as well as inventory

and office equipment, permitted Alexander to carry on the racketeering activity. *Id.* at 7. With respect to the inventory of videos and magazines held forfeitable, the court stated:

> A cursory review of those videos and magazines supplied by the government reveals that defendant acquired and distributed scores of materials which were similar in nature to those declared obscene. The Court has little doubt the inventory of videos and magazines held at the various properties previously determined forfeitable were part and parcel of defendant's racketeering schemes.

*Id.* at 7.

The court also ordered forfeiture of three motor vehicles, concluding that they were maintained by the activities of the RICO enterprise and purchased for use in the distribution of various materials to the business properties. *Id.* at 7-8.

Finally, the court ordered the forfeiture of all bank accounts, all funds credited to and traceable from the accounts, safe deposit boxes, and $8,910,548.10 in monies acquired, maintained, or constituting proceeds obtained from the racketeering activity for the years 1985 through 1988. *Id.* at 8-11. In considering the forfeiture of these funds, the court confronted the "serious question of the relationship between the dollars generated in the sale or distribution of the videos and magazines declared obscene, and that portion of defendant's enterprise which were not obscene." *Id.* at 8-9. The court acknowledged: "[T]here is little chance that the sale of these few videos and magazines could generate such massive income to the enterprise," and questioned whether the jury verdict finding only a small number of materials to be obscene could support such a vast forfeiture. *Id.* at 9. Nevertheless, the court held that the law and the facts of the case supported the forfeiture. *Id.* at 9. Although the district court made clear that it did not spend the 450-600 hours which would have been required to review each of the additional 400 videos submitted in the second phase of the forfeiture proceedings, the court conducted a general review of the videos, concluding that there was "little doubt some of it is of the same quality as that declared ob-

scene." *Id.* at 8. The court also observed that RICO forfeitures were *in personam* rather than *in rem* punishment, and that an *in personam* punishment deprives the defendant of all profits and proceeds acquired through the racketeering activity, " 'regardless of whether those assets are themselves "tainted" by use in connection with the illicit activity.' " *Id.* at 9–10 (quoting *United States v. Ginsburg*, 773 F.2d 798, 801 (7th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986)). While acknowledging that the determination of the amount of profits and proceeds from the racketeering activity cannot be precise, the court concluded that "gross profits are at least one acceptable measure of proceeds." *Id.* at 11. The court stated: "[T]he appropriate nexus between the proceeds and the illegal activity may be demonstrated by the jury's verdict of guilt, particularly if the proceeds are addressed in the indictment. In addition, the Court may consider all the evidence in the case, even circumstantial evidence to determine the amount to be forfeited and the connection between the racketeering activity and the proceeds." *Id.* at 12 (citations omitted).

The court further acknowledged that punishment for a RICO violation should be proportional to the racketeering crime. *Id.* at 12–13. Relying on cases from other circuits, the court stated that "[a] RICO forfeiture penalty 'is keyed to the magnitude of defendant's criminal enterprise.' " *Id.* at 13 (quoting *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498 (2d Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986)). The court observed that the indictment contained the bank accounts and the eight million dollar figure, and that "[t]he proceeds clearly supported the RICO scheme by providing the means and methods of transporting and selling obscene materials." *Id.* at 13. "Underlying those materials which the jury found obscene is that vast support system which made their existence and sale in this state possible." *Id.* The court flatly rejected Alexander's argument that such a vast forfeiture would violate his First Amendment rights, stating that the proceeds were "inextricably tied to the enormous racketeering enterprise, and their connection to arguably protected speech will not save them from the reach of RICO forfeiture." *Id.* at 13–14.

The court entered a judgment ordering forfeiture of: ten items of real estate; interests in some eighteen non-corporate businesses, including inventory, accounts receivable, vehicles, equipment, office furniture, computers, safes, television sets and videocassette recorders; currency and funds in some fifteen bank accounts; inventory and equipment in thirteen other non-corporate businesses, including inventory, equipment and furnishings; certain personal property including eight-millimeter projectors and videocassette recorders; three vehicles; and $8,910,548.10 constituting proceeds which Alexander obtained directly or indirectly from racketeering activities for the years 1985 through 1988. *United States v. Alexander*, No. 4–89–85, Order and Judgment of Forfeiture, slip op. at 2–12, 1990 WL 117882 (D.Minn. Aug. 6, 1990).

## I.

■ We must first decide whether we can analyze the excessive fines issue on the record before us or whether a remand to the district court is necessary. Alexander contends that we must return this case to the district court for development of a further record, and argues that the excessive fines issue cannot be resolved without a determination by the district court of the amount of assets forfeited to the government and the extent of unlawful activities.

The government, on the other hand, argues that the district court fully considered the forfeitures under the Eighth Amendment in its forfeiture orders, and asks that we conclude on the record before us that the forfeitures were not grossly disproportionate under the excessive fines clause. The government further contends that Alexander had ample opportunity to develop the record on his Eighth Amendment challenge to the scope of forfeiture, and that Alexander failed to meet his burden of establishing its excessiveness in the first instance. The government asks this court to formulate a constitutional standard to analyze forfeitures under

the excessive fines clause. Finally, the government argues that if we remand the case to the district court, we should vacate the entire sentence and remand for resentencing since the forfeiture was considered by the district court as part of Alexander's entire sentence.

In the district court's order of August 13, 1990, the court carefully detailed its reasoning for ordering forfeiture. On several occasions the court used the words "portion" and "proportional," and recognized the difficult question Alexander presented regarding the forfeitability of proceeds generated from the sale of nonobscene videos and magazines. Nevertheless, we read this order as establishing the basis for the extent of the forfeiture ordered, not as a proportionality analysis required by the Eighth Amendment. The court focused on the scope and income of the racketeering enterprise, not on the excessive fines clause of the Eighth Amendment. Indeed, the court's order does not outline the nature of the excessive fines argument that Alexander may or may not have made in the forfeiture proceedings.[1]

Suffice it to say, the painstaking care demonstrated by the district court in its forfeiture order does not reveal that the district court conducted a proportionality analysis under the excessive fines clause. While we can infer that the district court would not have ordered forfeiture to the extent that it did if it concluded that there was constitutional disproportionality under the excessive fines clause, the district court did not explicitly analyze the question.

Because the factual issues involved in the excessive fines analysis must be gleaned from a record following Alexander's four-month trial, as well as the separate bifurcated forfeiture proceedings and extensive documentary records, we conclude that the district court, rather than this court, should analyze the issue first. Many factors necessary to determining whether there is an excessive fine are of a factual nature. While

the record contains many findings that are critical to this issue, we are not satisfied that in facing the excessive fines issue, the district court would not have made further findings or conducted additional analysis.

Accordingly, we remand to the district court for further findings of fact and conclusions of law on the excessive fines issue.

## II.

■ It is appropriate that we set forth some principles to guide the district court on remand as it considers the excessive fines issue. First, we must consider the procedure the district court should utilize in considering an excessive fines issue. The court must, of necessity, base a criminal RICO forfeiture upon either appropriate findings by the jury or its own factual findings and analysis. This is what the district court has done in its forfeiture order in this case. Other circuits have been unanimous in holding that the defendant has the initial burden of making a prima facie showing of "gross disproportionality." *United States v. Sarbello,* 985 F.2d 716, 724 (3d Cir.1993); *United States v. Bucuvalas,* 970 F.2d 937, 946 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993); *United States v. 6250 Ledge Road,* 943 F.2d 721, 728 (7th Cir.1991); *United States v. Busher,* 817 F.2d 1409, 1415 (9th Cir.1987). *See also United States v. Pryba,* 900 F.2d 748, 757 (4th Cir.) (no proportionality analysis required because defendants failed to proffer required information), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990). As the Third Circuit observed in *Sarbello,* because section 1963 "mandates *in personam* forfeiture based upon a finding of criminal guilt, ... the burden of mitigating a draconian forfeiture verdict rests with the defendant." 985 F.2d at 724.

If Alexander satisfies his burden of showing gross disproportionality, the court must then consider the government's evidence of

---

1. We are unsure whether and to what extent Alexander presented his excessive fines argument to the district court. Alexander presented a general Eighth Amendment argument to this court on appeal mentioning the Eighth Amendment prohibition against cruel and unusual punish-

ments and excessive fines. The thrust of his argument was that the income from the racketeering activity amounted to only an infinitesimal percentage of his legitimate income and the combined effect of the forfeiture, fine, and prison sentence was "amazingly unfair."

"just proportionality" and analyze in detail whether there has been a violation of the excessive fines clause. *Id.*

■ The Supreme Court opinion in Alexander's case pointed to one aspect of this analysis when it rejected Alexander's argument that the forfeiture of the entire business was an excessive penalty on the basis of the few materials the jury ultimately decided were obscene. —— U.S. at ——, 113 S.Ct. at 2776. The Court pointed to the district court's finding of the "enormous racketeering enterprise," and stated: "It is in the light of the extensive criminal activities which petitioner apparently conducted through this racketeering enterprise over a substantial period of time that the question of whether or not the forfeiture was 'excessive' must be considered." *Id.* The Supreme Court thus directs that the district court consider the extent and duration of Alexander's criminal activities. Certainly, such an inquiry must also consider the gravity of the offense. As we stated above, the district court made abundant findings with respect to these issues.

Alexander and the government differ as to the importance of the value of the property forfeited. The government argues that only the extent of the illegal activity must be considered, while Alexander urges that the value of all items forfeited must be determined. We think it inherent in the inquiry that the court determine both the extent of the criminal activity and the quantum of property forfeited.[2] *See Alexander,* —— U.S. at ——, 113 S.Ct. at 2776; *Austin v. United States,* —— U.S. ——, ——–——, 113 S.Ct. 2801, 2814–15, 125 L.Ed.2d 488 (1993) (Scalia J., concurring).

■ It is also evident that other courts have recognized the distinction in the RICO forfeiture statutes between the proceeds from the racketeering activity and property which facilitates or affords a defendant with a source of influence over the illegal enterprise. *See, e.g., Sarbello,* 985 F.2d at 723; *United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity. In *Austin,* and in discussing the context of the forfeiture of property that facilitated the criminal activity, Justice Blackmun stated: "[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event." —— U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14.

In considering whether a forfeiture is grossly disproportionate, and thus, an excessive fine, we must analyze the specific facts involved in each case. Judge Mansmann's thoughtful opinion in *Sarbello* articulated other areas of inquiry:

> We note that a district court's proportionality analysis, while it will not in every case be extensive or encompass the three factors set forth in *Solem [v. Helm,* 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] (1983),] must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction. Other helpful inquiries might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability and, of course, the extent that the defendant's interest and

---

2. Although *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), involved a civil forfeiture under 21 U.S.C. § 881(a)(4) and (a)(7), the Supreme Court concluded that a civil forfeiture was subject to the limitation of the excessive fines clause. *Id.* at ——, 113 S.Ct. at 2803–05. The Court declined, however, to establish a multifactor test for making such a determination. *Id.* at ——, 113 S.Ct. at 2812. Justice Scalia's separate concurring opinion argues that when the offense of conviction is not relevant to the forfeiture, the single question is "not *how much* the confiscated property is worth, but

*whether* the confiscated property had a close enough relationship to the offense." *Id.* at ——, 113 S.Ct. at 2815 (emphasis in original). The Court noted Justice Scalia's suggestion "that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense," and did "not rule out the possibility that the connection between the property and the offense may be relevant." *Id.* at —— n. 15, 113 S.Ct. at 2812 n. 15. The Court did not, however, limit the court of appeals from considering other factors to determine whether the forfeiture of the property was excessive. *Id.*

the enterprise itself are tainted by criminal conduct. *See, e.g., United States v. Busher*, 817 F.2d [1409] at 1415 [ (9th Cir.1987) ] (where dollar amount of fraudulent conduct constituted a small fraction of the legitimate business of the enterprise, the court found a potential *prima facie* showing of excessive forfeiture). The language of the [E]ighth [A]mendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime.

985 F.2d at 724.

Our recital of these factors to be considered is not complete or exhaustive. The issue is fact-bound, and the district court's greater familiarity with the record may suggest other avenues for analysis. A review of the excessive fine issue must be based upon the analysis and record finally developed by the district court.

On remand, the district court should first determine whether Alexander has met his burden of proof of establishing a prima facie showing of a grossly disproportionate forfeiture. The briefs before us dispute the value of the property forfeited, other than the specific forfeiture of bank accounts and proceeds in the amount of $8,910,548.10. The district court must determine the total value of the property forfeited.

We also observe that the district court considered the relationship in this case between the forfeiture ordered and the sentences imposed.[3] The district court certainly should consider the sentences imposed in determining whether the forfeiture has been grossly disproportionate.

We have no doubt that the district court can make the necessary findings to analyze the excessive fines issue based upon the abundant record before it. If it determines that additional evidence must be taken to resolve this issue, it may, in its discretion, conduct any further necessary proceedings.

This court will retain jurisdiction of this case and further consider the issues when the district court files its further order, which will be directed to this panel for disposition.

Accordingly, we remand this case to the district court.

---

**3.** The separate sentencing order of the district court explicitly rejected the government's suggestion of a much higher fine than that imposed, stating that "the government's interests are well served by the forfeiture provisions of RICO and this Court's implementation of those sections." *United States v. Alexander,* No. 4–89–95, slip op. at 6 (D.Minn. Aug. 8, 1990).