**Roger Allen WOLFE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 5–95–16, Cr. No. 5–91–3(01).

United States District Court,
D. Minnesota,
Fifth Division.

May 8, 1995.

Roger Allen Wolfe, Littleton, CO, pro se.

## ORDER

MAGNUSON, Chief Judge.

### INTRODUCTION

This matter is before the Court upon Roger Allen Wolfe's petition contending this Court's sentence was imposed in error, *See* 28 U.S.C. § 2255, and an assortment of related motions. Petitioner raises two issues: (1) whether he was twice punished for the same conduct in violation of his Fifth Amendment rights; and (2) whether his counsel provided ineffective assistance. For the following reasons, the Court denies Wolfe's Petition for Writ of Habeas Corpus.

### BACKGROUND

In 1989 Petitioner Roger Allen Wolfe purchased Route 2, Box 349, Lamberton, Minnesota. Following a criminal investigation and a September, 1990 search of the property, and on its assertion that Wolfe's very substantial marijuana manufacturing operation provided him the only means of income with which to purchase the property, the government filed a Complaint in this Court for Forfeiture of the Lamberton property on October 5, 1990, pursuant to 21 U.S.C. § 881(a)(6) and (a)(7). At no time did Wolfe make a claim to the forfeited property or otherwise contest the forfeiture. On December 3, 1990, the Court Ordered that a Default Judgment and Forfeiture be entered against the property.

Wolfe was taken into custody on January 1, 1991, was released on his own recognizance on January 7, was indicted for multiple drug offenses on January 24 and February 22, absconded on February 23, and finally was recaptured in Costa Mesa, California, in June, 1992. In December 1992, a jury found Wolfe guilty of drug manufacturing and multiple related offenses, and the Court sentenced him to 187 months imprisonment.

## DISCUSSION

Wolfe argues that since the government first punished him in the separate civil forfeiture proceeding for the same violation of law, his criminal sentence violates the Double Jeopardy Clause. He also asserts that he his trial and appellate counsel provided ineffective assistance.

### I. Double Jeopardy

The Fifth Amendment provides, "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Department of Revenue v. Kurth Ranch,* —— U.S. —— n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994), *U.S. v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Civil forfeiture that is punitive implicates double jeopardy, while civil forfeiture that is solely remedial does not. *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02. The Supreme Court, in *Austin v. U.S.,* —— U.S. ——, ———–——, 113 S.Ct. 2801, 2810–12, 125 L.Ed.2d 488 (1993), applied *Halper* to hold that forfeiture under 21 U.S.C. § 881(a)(4) and (a)(7) constitutes "punishment" and is therefore subject to the limitations of the Eighth Amendment's Excessive Fines Clause. In *U.S. v. $405,089.23 United States Currency,* 33 F.3d 1210, 1216–19 (9th Cir. 1994), the Ninth Circuit specifically applied the punishment analysis of *Austin* and held that forfeiture under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) constitutes punishment for the purposes of double jeopardy as well.

The government asserts that the Lamberton property was forfeited because it constituted proceeds traceable to the unlawful exchange of controlled substances, and argues that civil forfeiture of criminal proceeds cannot constitute "punishment" for double jeopardy purposes. The government supports its factual contention by pointing out that Wolfe, despite being unemployed for three years and having no legitimate source of income, purchased the Lamberton property in the fall of 1989 with approximately $65,000 in cash. Wolfe's very substantial marijuana producing operation as alleged in the government's uncontested Complaint for Forfeiture also supports its contention that the property constituted the proceeds of illegal drug dealing. Wolfe has apparently never contested, nor does he now contest, the government's assertion that the forfeited Lamberton property was traceable to the illegal drug trade. For the purposes of this motion, the Court finds that the property in question was forfeited because it constituted proceeds of unlawful drug dealing.

The government supports its legal contention with *U.S. v. Alexander,* 32 F.3d 1231 (8th Cir.1994). In *Alexander,* the Eighth Circuit held that forfeiture of proceeds from an illegal venture cannot be considered "punishment" for Eighth Amendment purposes. *Alexander,* 32 F.3d at 1236. The court reasoned that such forfeiture "simply parts the owner from the fruits of the criminal activity." *Id.* Thus, notwithstanding Wolfe's reliance on *$405,089.23*'s holding that forfeiture of narcotics proceeds is punitive, *$405,089.23,* 33 F.3d at 1220, *Alexander* establishes contrary law in this circuit. *See also U.S. v. Tilley,* 18 F.3d 295, 300 (5th Cir.) (holding that forfeiture of illegal proceeds does not constitute "punishment"), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Because the Lamberton property was simply the proceeds of criminal conduct, its forfeiture was not punishment. Because the forfeiture of the Lamberton property was not punishment, the forfeiture does not implicate the Double Jeopardy Clause.

■ Even if forfeiting the proceeds of criminal conduct could otherwise constitute "punishment," this Court must yet deny Wolfe's present claim. For the criminal proceeding to have improperly put Wolfe in jeopardy a *second* time, he must have been *first* put in jeopardy by the civil forfeiture proceeding. *See Serfass v. United States,* 420 U.S. 377, 388–89, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265 (1975) (holding that a former jeopardy must have attached before the Double Jeopardy Clause is implicated); *U.S. v. Torres,* 28 F.3d 1463, 1465 (7th Cir.) (holding "You can't have double jeopardy without a former jeopardy"), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994).

In *Torres,* the Seventh Circuit held that a defendant tried and sentenced for purchasing cocaine could not rely on the Double Jeopardy Clause for relief where the alleged first jeopardy was the uncontested civil forfeiture of the $60,000 the defendant had used in the cocaine purchase. The court reasoned that Torres was never put in jeopardy in the civil forfeiture proceeding because, as a non-party, he was not at risk of a determination of his guilt. *Torres,* 28 F.3d at 1465.

While no other circuit court has addressed the issue, many district courts have followed *Torres* reasoning. *See, e.g., U.S. v. Nakamoto,* 876 F.Supp. 235, 236–39 (D.Hawaii 1995) (following *Torres* and holding that the defendant's failure to contest civil forfeiture prohibited his claim of double jeopardy); *U.S. v. Kemmish,* 869 F.Supp. 803 (S.D.Cal.1994) ("Defendant ... was not placed in jeopardy in the administrative proceeding because he made no claim and was not a party to [the forfeiture] proceeding."); *Dawkins v. U.S.,* 883 F.Supp. 83 (E.D.Va.1995) (holding double jeopardy not implicated because the petitioner "was not a party to the forfeiture by his own choice"); *U.S. v. Cotts,* No. 95 C 1049, 1995 WL 230890 (N.D.Ill. April 18, 1995) (holding that because the defendant did not assert a claim in the forfeiture proceeding "he cannot use that proceeding as a basis for a double jeopardy"); *U.S. v. Leaniz,* No. CR–2–90–18, 1995 WL 143127 (S.D.Ohio March 31, 1995) (concluding that there was no guilt determination, and therefore jeopar-

dy did not attach to a defendant who filed no claim to forfeited property even though he received no actual notice of the forfeiture proceedings).

Wolfe relies on *U.S. v. McCaslin,* 863 F.Supp. 1299 (W.D.Wash.1994), and *U.S. v. Aguilar,* apparently an unreported district court decision from the Eastern District of Washington,[1] for the proposition that his failure to claim the property or otherwise contest the forfeiture is irrelevant. *McCaslin* is inapposite. That case involved a forfeiture action in which the defendant was in fact a party. The defendant elected to stipulate with the government to the entry of judgment in the forfeiture action, and in doing so, "agreed to forfeit his interest in the real property." *McCaslin,* 863 F.Supp. at 1303. In other words, the defendant in *McCaslin* had a claim to the property but nine months after the government brought the civil forfeiture action the defendant entered an agreement with the government in which the defendant relinquished that claim. Here, however, Wolfe was never a party to the civil forfeiture proceeding.

■ Wolfe quotes *Aguilar* as expressly declining to follow *Torres* and as stating, "it is irrelevant whether, as the government claims, Aguilar failed to contest the forfeiture. (Analogously, incarceration is still punishment, even if it is sentenced pursuant to a plea agreement rather than a contested trial.)" Petitioner's Supp. at 25. Assuming this to be an accurate quotation, *Aguilar* misses the mark; its comparison of civil forfeiture to criminal sentencing is erroneous. In a criminal proceeding, once the government brings an indictment a defendant's guilt is at issue. Unlike a civil forfeiture action, from which any person can remain a non-party merely by not filing a claim, a criminal defendant becomes a party once he is *indicted*; he does not enjoy the luxury of remaining a non-party. And unlike refusal to become a party to a civil forfeiture, removing oneself from a criminal trial by entering a entering a plea agreement—i.e., by pleading *guilty*—certainly determines guilt. As dis-

**1.** Wolfe quotes from, but fails to provide the    Court a copy of the *Aguilar* decision.

cussed above, it is the risk of determination of guilt to which jeopardy attaches.

Alternatively, Wolfe argues that the $60,000 in cash seized in *Torres* distinguishes it from this case. He argues that *both* the court's uncertainty as to whether the *Torres* defendant was the actual owner of the $60,000 *and* the defendant's failure to file a claim in the forfeiture proceeding were necessary for its finding that the Double Jeopardy Clause was not implicated. The Court disagrees.

■ Wolfe correctly points out that the *Torres* court discussed the Court's uncertainty regarding the defendant's alleged interest in the $60,000. However, the court was clearly providing an alternative reason for its finding. Its first basis for finding the Double Jeopardy Clause inapplicable was that, as a non-party in the forfeiture proceeding, the defendant was never at risk of a determination of guilt. The *Torres* court went on to state, "Indeed, because Torres did not make a claim ... we have no reason to believe that he owned or had any interest in the money." 28 F.3d at 1465. That a person keeps himself from the risk of a determination of guilt, or that the government seeks in a forfeiture proceeding property that does not even belong to a particular person, each would support a finding that Double Jeopardy has not attached to such a person. The court went on to summarize its second rationale, "If Torres lacked an interest in the cash ... *again* the argument ... fails." *Id.* at 1466. (emphasis added). In other words, the double jeopardy argument failed because the *Torres* defendant did not file a claim in the civil proceeding, and failed "again" because he failed to make a showing in either the civil *or* criminal proceeding that he even had a stake in the forfeited property.

Indeed, other district courts have recognized that failure to file a claim in the civil forfeiture proceedings sufficiently foreclosed a double jeopardy claim even where the claimant's title or interest in the forfeited property is apparent. *See, e.g., U.S. v. Jor-*

dan, No. CR 90–28–JO, 1995 WL 236266 (D.Or. April 5, 1995) (finding no attachment of jeopardy when the defendant failed to file a claim in a civil forfeiture of his own real property); *U.S. v. D'Angelo,* No. CR 86–20009 JW, 1995 WL 218587 (N.D.Cal. March 15, 1995) (rejecting the defendant's argument that *Torres* rests on the fact that there was a question about Torres' interest in the $60,000, and holding the uncontested forfeiture of the defendant's vehicle, despite his obvious interest in the vehicle, did not put the defendant at jeopardy); *U.S. v. Sherrett,* 877 F.Supp. 519 (D.Or.1995) (finding no attachment of jeopardy when the defendant failed to file a claim in a civil forfeiture of his own real property).

■ This Court finds this case substantially indistinguishable from *Torres.* The Court adopts the reasoning of *Torres,* and concludes that because Wolfe was not a party to the civil forfeiture of the Lamberton property, jeopardy did not attach to him in the forfeiture proceeding. The uncontested civil forfeiture never put Wolfe in jeopardy of a determination of his guilt. Because "[y]ou can't have double jeopardy without a former jeopardy," the Double Jeopardy Clause is not implicated here.

## II. Ineffective Assistance of Counsel [2]

■ In evaluating an ineffective assistance of counsel claim, a court must be highly deferential to a trial counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). This requires the reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* A showing of deficiency is not enough, the claimant must also prove that his counsel's deficiency prejudiced him by depriving him of a fair trial. *Id.* at 687, 104 S.Ct. at 2064.

■ Wolfe's first basis for his ineffective assistance of counsel claim is that his trial and appellate counsel failed to raise the issue

**2.** Despite this Court's Order for a government response to Wolfe's claims pursuant to Rule 4 or Rules Governing § 2255 Proceedings (Clerk Doc. No. 71), the government has chosen not to respond to Wolfe's ineffective assistance of counsel claim. Therefore, the Court relies on Wolfe's submissions to resolve this claim.

of double jeopardy. Because double jeopardy was inapplicable, counsel was not ineffective for not raising the issue.

██ Wolfe also contends that his trial counsel was ineffective by failing to use discovery or other means to determine that witness Stacey Town gave false testimony. Wolfe's position is without merit. Town testified on the several occasions cited in Wolfe's submissions that there existed "no promise" that Town would receive a downward departure in his own sentence for his testimony in this case. Town testified, "It's just a motion to a downward departure." Wolfe asserts that the government in fact had already moved to reduce Town's sentence, and therefore it was false that the government might later refuse to do so.

Indeed, the government had by then, on August 7, 1992, moved the Court to reduce Town's sentence. However, Wolfe completely ignores the context and substance of that motion. Town had agreed to plead guilty for his involvement as a codefendant in this case, and had already been sentenced well before Wolfe's trial was to begin. As part of his plea agreement, the government would move for a downward departure *if* he cooperated with the government by providing truthful information during further investigation, grand jury proceedings, and trials. Because Wolfe was then a fugitive, time constraints required that Town's sentencing occur well before Wolfe's trial commenced. Hence, at his sentencing, Town could not be afforded the plea agreement benefit of a sentence reduction for assisting the government by testifying at Wolfe's trial. Rule 35(b) of the Federal Rules of Criminal Procedure imposed a one-year limitation on a motion for a reduction of sentence. So on August 7, 1992, after the fugitive Wolfe was recaptured and exactly one year after Town was sentenced, the government moved the Court to reduce Town's sentence in consideration for his *anticipated* testimony at Wolfe's trial. However, the government expressly requested the Court defer ruling on the motion until *after* Town testified at Wolfe's trial, and concluded, "the government specifically reserves the right to withdraw this motion should the defendant Town withhold assistance to the

government in regard to this case." *See* Gov.'s Mo.Red.Sent. at 2. Town's testimony and the government's position that Town had no guarantee either that the government would ultimately seek to reduce Town's sentence or that the Court would grant such a motion was truthful and accurate, providing Wolfe with no basis for an ineffective assistance claim.

Wolfe next contends that counsel's failure to object to certain evidence, or to move for a mistrial when the Court admitted certain evidence over his counsel's objections, proves his ineffective assistance claim. This evidence includes various testimony: that Wolfe had produced crops of marijuana at a time before the conduct alleged in the Indictment; that he smoked marijuana; that he had provided a dishonored check; that he first met his former girlfriend when he was 18 years her senior; that he had gone through bankruptcy proceedings; that his back porch reeked of growing marijuana; that when he was finally apprehended at the conclusion of his year and a half stint as a fugitive he was working in an auto body shop that dealt in stolen cars and had marijuana in his room; and that he had recently threatened his girlfriend from jail.

The Court finds that counsel's failure to object to certain evidence, or to move for a mistrial when the Court admitted certain evidence over his objections, was proper. Wolfe's argument is apparently based on the misconception that Rule 404 of the Federal Rules of Evidence prohibits evidence of other crimes, wrongs or acts under all circumstances. While not admissible to prove the character of a person merely to show a propensity to commit the crime charged, such evidence *is* admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, [or] knowledge. . . ." Fed. R.Evid. 404(b).

██ Evidence proving that Wolfe had previously manufactured marijuana before the manufacturing period as charged in the Indictment is relevant to prove preparation, a common plan, opportunity and skill to commit the crimes charges. Evidence that he smoked marijuana and that his back porch reeked of growing marijuana circumstantially

proved the crimes charged by demonstrating his access to his own marijuana crops and the presence of those crops on his property and in his control. Additionally, Wolfe took the position through his counsel at the opening of the trial that he wanted nothing to do with marijuana and was not involved in the production of marijuana, opening the door to evidence to the contrary. In any event, Wolfe was not prejudiced by his trial counsel's failure to move for a mistrial: The Court would have properly and flatly denied such a motion.

■ Next, evidence that Wolfe had provided a dishonored check or that he had gone through bankruptcy proceedings demonstrated Wolfe's lack of finances. Such evidence is relevant to demonstrate Wolfe's motive to manufacture marijuana, and also circumstantially proved the crimes charged by establishing the disparity between his lack of a legitimate income source and his standard of living.

■ The brief testimony that Wolfe first met his former girlfriend when she was 19 and he was 37 simply provided general background to familiarize the jury with the witness and foundation regarding the relationship between the witness and Wolfe. Wolfe's contention that the real purpose of this testimony was the government's intent to show that Wolfe "was a person of low morals" is unsupported and without merit. Any prejudice from this testimony was *de minimis,* any objection to it would have been overruled, and certainly, this Court would not have granted a motion for mistrial based upon it. His counsel's failure to object to this evidence or to move for a mistrial upon admission of this evidence did not prejudice Wolfe.

■ Evidence that when Wolfe was finally apprehended as a fugitive he was working in an auto body shop that dealt with stolen cars provided general foundation regarding how the California officer came in contact with Wolfe, and evidence of his possession of marijuana at the time of that apprehension was certainly relevant to refute Wolfe's theme of the case, already before the jury—that Wolfe was not involved with marijuana. The evidence that Wolfe had recently threatened his girlfriend from jail was also relevant and proper. This evidence circumstantially demonstrated Wolfe's culpability. A defendant who attempts to silence a witness or to alter her testimony through implied personal threats demonstrates his belief about his own guilt. Again, counsel's objections were properly overruled, and the Court properly would have denied a motion for mistrial had one been made upon the admission of this evidence.

Wolfe simply was not prejudiced by his counsel's treatment of any of this evidence. Wolfe has not here met his substantial burden in his claim that his counsel provided him ineffective assistance.

■ Wolfe next contends that his counsel was ineffective because he failed to cross examine a particular witness after Wolfe "told counsel" that the witness had testified falsely. He also criticizes his counsel for calling only one witness. Such a challenge to these apparent trial strategies cannot support a finding that Wolfe's Counsel was ineffective. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Wolfe next alleges that his appellate counsel, the court reporter and the Assistant United States Attorney conspired to fraudulently alter the trial transcript. He also contends that the fraudulent transcript was "supplied to judges across state lines," and that this offense, therefore, violates some unspecified federal law. Wolfe offers nothing to support these frivolous claims; so likewise, the Court summarily dismisses them.

Wolfe also raises several other bases for his ineffective assistance of counsel assertion. However, Wolfe somehow neglected to mention—let alone offer support—for these in any of the over 150 pages of briefs, motions and exhibits he has filed in this matter. The Court also disregards them except to state that they appear to be meritless.

In sum, Wolfe has not shown that his counsel performed unreasonably or that Wolfe was prejudiced by his counsel's representation. Wolfe has not met his burden of showing deficiency and prejudice, and the

Court must deny his ineffective assistance of counsel claim.

## CONCLUSION

The Double Jeopardy Clause is not implicated because the uncontested civil forfeiture did not put Wolfe in a first jeopardy. Wolfe's ineffective assistance of counsel claims are without merit. His counsel performed adequately and Wolfe was not prejudiced by his counsel's alleged breaches. Wolfe's accompanying motions are moot.

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Petitioner's Motion under § 2255 to vacate his sentence (Clerk Doc. No. 59) is DENIED;

2. Petitioner's Motion for Summary Judgment as to his Double Jeopardy Claim (Clerk Doc. No. 62) is DENIED;

3. Petitioner's Motion for Appointment of Counsel (Clerk Doc. No. 65) is DENIED;

4. Petitioner's Motion for Appointment of Experts, Investigators, and Financial Assistance (Clerk Doc. No. 66) is DENIED;

5. Petitioner's Motion for an Evidentiary Hearing (Clerk Doc. No. 67) is DENIED;

6. Petitioner's Motion for Discovery (Clerk Doc. No. 68) is DENIED;

7. Petitioner's Motion for Release Pending Motion to Vacate Conviction and Sentence (Clerk Doc. No. 69) is DENIED; and

8. Petitioner's claims are DISMISSED WITH PREJUDICE.