UNITED STATES of America, Plaintiff

v.

**ONE 1989, 23 FOOT, WELLCRAFT MOTOR VESSEL, PUERTO RICO REGISTRATION NUMBER PR 2855GG, et al., Defendants.**

Civil No. 90–1571 (PG).

United States District Court,
Puerto Rico.

Dec. 13, 1995.

Miguel Fernández, Assistant U.S. Attorney, Hato Rey, P.R., for plaintiff.

Joseph Laws, Hato Rey, P.R., Ramón García–García, Santurce, P.R., Carlos Ortiz–Velázquez, Hato Rey, P.R., Eric Singleton, Santurce, P.R., José Delgado–Cadilla, Joanna Bocanegra–Ocasio, José Carrión Morales, San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

The matter before the Court is a motion filed by claimant, Eusebio Escobar De Jesús, requesting, *inter alia,* the lifting of stay of the proceedings, the restitution of all properties (real and personal) seized from him, and the immediate dismissal of the present *in rem* civil forfeiture complaint as relates to his seized properties (Docket # 91). The grounds adduced by Escobar in support thereof are: (1) that the *in rem* proceedings are barred by the Double Jeopardy Clause of the Fifth Amendment as well as by the "Punishment Clause" of the Eight Amendment; and (2) that the government's failure to afford him notice and hearing before seizing his properties violated the "Due Process Clause" of the Fifth Amendment. The government filed an opposition to Escobar's motion (Docket # 98).

### Background

On April 18, 1990, a federal grand jury sitting in Puerto Rico returned an indictment charging Escobar and others with conspiracy to possess, with the intent to distribute 80 kilograms of cocaine, and a conspiracy to import 320 kilograms of cocaine, among other criminal charges. After a trial and a verdict of conviction on several of the criminal drug trafficking counts, Escobar was sentenced to a term of life imprisonment.

On April 23, 1990, the United States Attorney for the District of Puerto Rico filed an application for seizure warrant against, *inter alia,* a number of Escobar's real estate and personal properties. A sworn affidavit of an agent of the Federal Drug Enforcement Administration (DEA) stated on information and belief that Escobar was a drug dealer who did not maintain a legitimate employment which could generate substantial finan-

cial proceeds. The application states that the named real estate and personal properties of Escobar were acquired by him with the proceeds obtained from the sale of narcotics and subject to forfeiture by the government under 21 U.S.C. § 881(a)(6), which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \* \* \* \*

(6) All moneys, negotiable instruments, securities, or other things of value furnished, or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

\* \* \* \* \* \*

The magistrate judge found probable cause based on the DEA agent's affidavit that all of Escobar's possessions were purchased with the proceeds of illegal drug sales and he issued seizure warrants for all of Escobar's personal and real estate properties. The DEA then seized all of the properties subject to forfeiture.

On the same date the above described application was filed the government filed a civil forfeiture complaint against, *inter alia*, Escobar's properties named in the application. The complaint alleged that all of the defendant's[1] real and personal properties identified in the caption of the complaint constituted proceeds traceable to an illegal drug exchange and/or were used or intended to be used to commit or to facilitate the commission of violations of 2 U.S.C. § 846, 960, 963 and 841(a)(1). Violations of these statutes are punishable by more than one year's imprisonment. The United States seeks to forfeit Escobar's properties as being purchased with the proceeds of drug sales under the provisions of 21 U.S.C. §§ 881(a)(6).

Escobar now moves to dismiss the forfeiture proceedings contending that his conviction and the forfeiture of his personal and real estate property in a separate civil proceeding violates the Double Jeopardy Clause because the government is punishing him twice for the same offense. In support of his motion, Escobar essentially cites three Supreme Court cases: *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), and primarily relies upon a Ninth Circuit case, *United States v. $405,089.23 United States Currency,* 33 F.3d 1210 (9th Cir.1994).

### *Double Jeopardy*

■ The Double Jeopardy Clause protects, *inter alia*, against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Schiro v. Farley,* —— U.S. ——, ——, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994). The Supreme Court's recent decisions give the "no multiple punishments" rule a "breadth of effect it had never before enjoyed." *See Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1957 (Scalia, J., dissenting). In *United States v. Halper, supra,* cited in *United States v. A Parcel of Land With a Building Thereon,* 884 F.2d 41, 43 (1st Cir.1989),

the Supreme Court held that a civil penalty under the federal civil False Claims Act would constitute punishment if it were so large as to be totally divorced from the government's actual damages and expenses. Such a punishment would violate the Double Jeopardy Clause of the Fifth

---

**1.** The present *in rem* civil forfeiture is filed against the real and personal properties of several defendants, among which is defendant Escobar. The basis for the *in rem* forfeiture is that the properties either constitute the proceeds of narcotics violations pursuant to section 881(a)(6) and/or they were used or intended to be used in the commission or facilitation of narcotics-related activities pursuant to section 881(a)(7). However, as to Escobar's properties, the complaint specifically stated that they were acquired with proceeds from illegal drug activities, therefore the proceedings as to those properties is under section 881(a)(6).

Amendment if there were an earlier federal criminal conviction for the same offense.

The Court emphasized that if the civil sanction bears a rational relationship to the offense, is not wholly disproportionate and is compensating the government for its loss, it will be viewed as remedial, as opposed to an additional punishment. In the second case, *Austin v. United States, supra,* the Court relied upon *Halper* to conclude that civil forfeitures undertaken pursuant to 21 U.S.C. §§ 881(a)(4), and 881(a)(7),[2] constitute punishment for purposes of the Eighth Amendment Excessive Fines Clause analysis. The Court held that, although "forfeiture of contraband itself may be characterized as remedial[,]" *id.* 509 U.S. at ——, 113 S.Ct. at 2811, forfeiture under subsections (a)(4) and (a)(7) "constitutes 'payment to a sovereign as punishment for some offense,' ... and, as such, is subject to the limitations of the Eighth Amendment's excessive Fines clause." *Id.* at ——, 113 S.Ct. at 2812 (citation omitted).

The issue in *Kurth Ranch, supra,* was whether a state tax imposed on the possession and storage of dangerous drugs constituted second punishment for purposes of the Double Jeopardy Clause. The Supreme Court applied the *Halper* test recognizing that the Court decided that the legislature's description of a statute as civil is not determinative of the Double Jeopardy issue. Therefore, the Court focused on whether the tax had punitive characteristics that subjected it to the constraints of the Double Jeopardy Clause. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1945. The Court found that the drug tax was punitive in character based on the fact that the tax was conditioned on the commission of a crime for the precise conduct that gave rise to the tax obligation and that therefore the tax must be imposed in the first proceeding or not at all. —— U.S. ——, 114 S.Ct. at 1948.

The Supreme Court has not addressed the issue of whether and under what circumstances a civil forfeiture under either 21 U.S.C. § 881(a)(7) or 21 U.S.C. § 881(a)(6) amounts to punishment for double jeopardy purposes. There has been a split of authority among the various circuit courts that have tackled the issue.

The Court of Appeals for the Ninth Circuit extended the Supreme Court's reasoning in *Austin* to forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) for purposes of double jeopardy analysis. *United States v. $405,089.23 U.S. Currency, supra.* Applying the Supreme Court's approach of looking at the statute as a whole, rather than the specific facts of each case, the Ninth Circuit concluded that

> the only fair reading of the Court's decision in *Austin* is that it resolves the "punishment" issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause as well as the Excessive Fines Clause. In short, if a forfeiture constitutes punishment under the *Halper* criteria, it constitutes "punishment" for purposes of both clauses.

33 F.3d at 1219.

The Court of Appeals for the Fifth Circuit determined to the contrary that the civil forfeiture of the proceeds from drug sales was not punishment. *United States v. Tilley,* 18 F.3d 295 (5th Cir.1994). The Fifth Circuit, interpreting *Austin,* distinguished

---

**2.** (a) Property subject

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

&ast; &ast; &ast; &ast; &ast; &ast;

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9), except that—

&ast; &ast; &ast; &ast; &ast; &ast;

(7) All real property, including any right, title, and interest (including any leasehold interest)

in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

between the forfeiture of conveyances and real estate, which have no correlation to, or proportionality with, the harm inflicted upon the government and society by the underlying criminal act, and forfeiture of drug proceeds, which, by their very nature, "will always be directly proportional to the amount of drugs sold," which, in turn, "are roughly proportional to the harm inflicted upon government and society by the drug sale. Thus, the logic of *Austin* is inapplicable to section 881(a)(6)—the forfeiture of drug proceeds." *Id.* at 300.

> Moreover, the court determined that:

> Even absent the rational relation test of *Halper*, we would nevertheless be required to hold that the forfeiture of the proceeds from illegal drug sales does not constitute punishment because of the implicit and underlying premise of the rational relation test. The nature of the forfeiture proceeding may constitute punishment because it involves the extraction of lawfully derived property from the forfeiting party. . . . When, however, the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him. *Id.*

The Court of Appeals for the Eighth Circuit concluded similarly to the Fifth Circuit to the effect that the forfeiture of illegal proceeds is not punitive and therefore does not trigger the Double Jeopardy Clause. *United States v. Alexander*, 32 F.3d 1231 (8th Cir.1994). *See also United States v. $21,282.00 in U.S. Currency*, 47 F.3d 972 (8th Cir.1995) (holding forfeiture of a boat and currency that were the proceeds of criminal activity does not constitute punishment implicating the Eighth Amendment's Excessive Fines Clause).

The Court of Appeals for the Sixth Circuit has followed the Ninth Circuit analysis with respect to forfeitures only under 21 U.S.C. § 841(a)(7), of real property used or intended to be used to facilitate a violation of 21 U.S.C. § 881 that is punishable by more than one year. *United States v. Ursery*, 59 F.3d 568, 572–73 (6th Cir.1995). However, the Sixth Circuit adopted the Fifth Circuit's view with respect to forfeitures of drug proceeds:

> Not only are drug proceeds inherently proportional to the damages caused by the illegal activity, as stated above, but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity. We therefore adopt the view in *Tilley* that forfeiture of drug proceeds is not punishment, but is remedial in nature.

*United States v. Salinas*, 65 F.3d 551 (6th Cir.1995).

The Third Circuit has not specifically addressed this issue, however it has commented that it "can certainly understand how a court might conclude that civil forfeiture under 21 U.S.C. § 881(a)(6) of drug proceeds constitutes 'punishment' for double jeopardy purposes." *United States v. Baird*, 63 F.3d 1213, 1217 (3rd Cir.1995), citing *$405,089.23 United States Currency*, 33 F.3d at 1218–22.

The First Circuit issued an opinion after the *Halper* case but before the *Austin and Kurth Ranch* cases in the context of a drug-related civil forfeiture action brought under 21 U.S.C. § 881(a)(7). The First Circuit gave the reasons why the *Halper* case was inapplicable. The first reason given was that prior to *Halper* the Supreme Court had specifically held in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1994), that the doctrine of Double Jeopardy did not apply to a civil forfeiture proceeding such as the one present in the case. The second reason relates to the particular facts of the case which involved suits brought by separate sovereigns. The third reason espoused by the Court was that the forfeiture of the entire property used in the cultivation and possession of marijuana was a justifiable means to remedy the government's injury and loss that resulted from the illegal marijuana operations. The Court reasoned:

> The ravages of drugs upon our nation and the billions the government is being forced to spend upon investigation and enforcement—not to mention the costs of drug-related crime and drug-abuse treatment, rehabilitation, and prevention easily justify a recovery in excess of the strict value of the property actually devoted to growing

the illegal substance, in this case marijuana.

*United States v. A Parcel of Land With a Building Thereon,* 884 F.2d at 44.

Whether this opinion is still good law after the *Austin* and *Kurth Ranch* cases we need not decide. What is involved in our case at hand is the forfeiture of properties obtained with criminal proceeds, and as to this issue the First Circuit has not ruled upon whether or under what circumstances a civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) amounts to punishment for Double Jeopardy purposes. *Laliberte v. United States,* 899 F.Supp. 846 (D.Mass.1995).

This Court will follow *Tilley*'s rationale (mindful also of the arguments set forth by Justice Scalia in his dissent in *Kurth Ranch*). We share the view expressed by the district court of Massachusetts.

> The drug trade ravages the lives of individuals and families and poisons the community at large with its train of sickness, crime and social disorder. It is necessary for government to carry out its responsibility to protect society from its deadly scourge. To hold that the act of forfeiting contraband goods constituted a basis for double jeopardy would have as its consequence the necessity for government to either forego the forfeiture of the contraband and/or to forego the prosecution of the crime. For government to be placed in such a dilemma is intolerable to the good order of society.

*Laliberte v. United States,* at 847. *See also United States v. Unangst,* 1995 W.L. 481495 (E.D.Pa.) (rejecting the Ninth Circuit's reasoning in drug proceeds cases in favor of the Fifth Circuit's analysis, the Court concluded that *Austin* neither extends to all civil forfeitures of proceeds nor does it preclude an inquiry of whether the forfeiture was excessive in nature); *United States v. Ukandu,* 894 F.Supp. 197 (E.D.Pa.) (reasoning that forfeiture of proceeds property rather than facilitating property is not punishment because the owner has lost nothing to which he was ever lawfully titled).

■ In conclusion, we believe that the strength of the arguments tilts the balance in favor of the position that drug proceeds are the functional equivalent of contraband and, therefore, we will follow *United States v. One Assortment of 89 Firearms, supra,* in holding that the civil forfeiture of drug proceeds is a remedial sanction that does not constitute punishment for double jeopardy purposes.

### Due Process

The government filed a supplemental brief in relation to Escobar's allegation of due process violation based on the recent Supreme Court case of *United States v. James Daniel Good Real Property, et al.,* ── U.S. ──, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

■ The Supreme Court held in *Good Real Property* that absent exigent circumstances,[3] the government could not seize real property in a civil forfeiture proceeding without affording the owner pre-seizure notice and hearing. *Id.* at ──, 114 S.Ct. at 505.

The government argues that they followed the procedure established by the First Circuit in *in rem* civil forfeiture proceedings prior to the Supreme Court's decision in *Good Real Property.* However, they acknowledge that the *Good Real Property* decision applies retroactively to all pending civil forfeiture cases. *See United States v. Real Property Located 20832, Big Rock Dr.,* 51 F.3d 1402, 1405 (9th Cir.1995).

The Supreme Court in *Good Real Property* held the following procedures to be illegal:

> [a] United States Magistrate Judge found that the Government had established probable cause to believe *Good*'s property was subject to forfeiture ... [and a] warrant of arrest *in rem* was issued, authorizing seizure of the property.... The Government [then] seized the property ... without prior notice to *Good* or an adversary hearing.

**3.** In order to establish exigent circumstances, "the Government must show that less restrictive measures—*i.e.,* a *lis pendens,* restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Good Real Property, Id.*

*Good Real Property,* —— U.S. at ——, 114 S.Ct. at 497–98.

The seizure of Escobar's real estate properties was similar to *Good Real Property*'s seizure and to the seizure in *Real Property Located 20832,* except for defendant property known as Sueño Real, located on State Road 187, which was never actually seized but instead notice was posted and a *lis pendens* was filed in the property registry.

The government's legitimate interests at the inception of forfeiture proceedings to ensure that the property not be sold, destroyed, or used for further illegal activity prior to forfeiture judgment can be secured without seizing the property such as by filing a notice of *lis pendens* as authorized by state law, by obtaining an *ex parte* restraining order or other appropriate relief upon a proper showing in district court, and by obtaining in the ordinary course search and arrest warrants. —— U.S. at ——, 114 S.Ct. at 503.

Although it appears that the government left the occupants in possession of Escobar's real estate properties under an occupancy agreement pending the final forfeiture ruling, the government did take the additional step of asserting control over the properties without first affording Escobar notice and an adversary hearing. Therefore, the seizure violated Escobar's Fifth Amendment right to due process.

This does not end the Court's inquiry for the question remains: what remedies are available?

Again, there is a split of authority as to what the remedy should be. The Eighth and Eleventh Circuits require a dismissal of the forfeiture action if there is a government's *Good Real Property* violation with leave to file a new action if the statute of limitations has not run. *See United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.,* 27 F.3d 327, 330 (8th Cir.1994); *United States v. 2751 Peyton Woods Trail,* 66 F.3d 1164 (11th Cir.1995) (following the Eighth Circuit's rationale).

On the other hand, the Second, Third, Seventh, Ninth and Tenth Circuits are of the view that the illegal seizure does not, standing alone, require that the property be immune from forfeiture. *See United States v. Real Property Located In El Dorado,* 59 F.3d 974 (9th Cir.1995); *United States v. All Assets and Equip. of West Side Bldg.,* 58 F.3d 1181, 1193 (7th Cir.1995); *United States v. 51 Pieces of Real Property Roswell, N.M.,* 17 F.3d 1306 (10th Cir.1994); *United States v. Premises Known as RR # 1,* 14 F.3d 864, 869 n. 5 (3rd Cir.1994); *United States v. Premises and Real Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1265–66 (2nd Cir.1989). Under this view, the government must remit any rents or profits accrued during the illegal seizure of the property. The recent Ninth Circuit Court case adds that an award of rent may not be the sole relief available, that claimants might also be entitled to damages for loss of use and enjoyment of the properties caused by the illegal seizure. *United States v. Real Property Located In El Dorado, supra.* The Tenth Circuit also concluded that any constitutional harm could be remedied by the suppression of any evidence gained through the illegal seizure. *51 Pieces of Real Property,* 17 F.3d at 1316.

■ The Court believes that the approach of the majority of the circuits provides an effective remedy for the violation of Escobar's rights. Applying that approach to the particular facts of the present case we find that Escobar is not entitled to damages and profits as to the property located at Sector La Gallera number 69 because Escobar's wife was allowed to remain in that property, nor as to defendant Property Sueño Real, because even assuming it was actually seized, according to the government it was leased to a church with rental proceeds being paid to claimant. However, as to the property located at 9th Street, number 51, Parcelas Suárez, where the tenant was allowed to remain on the property, no information is provided as to whether an occupancy agreement provided for the payment of rentals and to whom should the rents be paid. If rents were collected by the government, they must be returned to Escobar.

In view of the above findings and conclusions, the Court hereby **DENIES** Escobar's motion and **ORDERS** the government to inform the Court within **ten (10) days** about

the occupancy agreement the government has with the tenant in relation to the property located at 9th Street, number 51, Parcelas Suárez.

**IT IS SO ORDERED.**