United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 90-5417
_____

United States of America,          *
                                    *
          Plaintiff-Appellee,       *
                                    *  Appeal from the United States
     v.                             *  District Court for the
                                    *  District of Minnesota.
Ferris Alexander,                   *
                                    *
          Defendant-Appellant.      *

_____

Submitted:  September 11, 1996

Filed:  March 10, 1997
_____

Before WOLLMAN, FLOYD R. GIBSON, and JOHN R. GIBSON, Circuit
     Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Ferris Alexander is before us again.  The United States
Supreme Court remanded this case for a determination of whether the
forfeiture of Alexander's property under the Racketeer Influenced
and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (1994),
violated the Eighth Amendment prohibition against excessive fines.
Alexander v. United States, 509 U.S. 544, 559 (1993).  Following
our remand to the district court, United States v. Alexander, 32
F.3d 1231 (8th Cir. 1994) (Alexander II), the district court[1] held

_____

[1]The Honorable James M. Rosenbaum, United States District
Judge for the District of Minnesota.

that Alexander failed to make a prima facie case of disproportionality, and Alexander appeals this order. Alexander argues that the forfeiture of his property was prima facie disproportionate, and thus, constituted an excessive fine. He argues that the district court ignored uncontroverted valuation evidence, erroneously excluded property forfeited from the proportionality analysis, and misconstrued the legal and factual tests applicable to a proportionality analysis. We affirm.

The details of Alexander's convictions and forfeiture of property are set forth in <u>Alexander v. Thornburgh</u>, 943 F.2d 825, 826-29 (8th Cir. 1991) (<u>Alexander I</u>), <u>Alexander II</u>, 32 F.3d at 1233-34 (8th Cir. 1994), and <u>Alexander</u>, 509 U.S. at 547-49.[2] We affirmed the district court's forfeiture order, 943 F.2d at 832-36. The Supreme Court reversed and remanded for consideration of whether the forfeiture of Alexander's property violated the Eighth Amendment's prohibition against excessive fines. 509 U.S. at 559. We, in turn, remanded the case to the district court to consider this issue and to take additional evidence as it deemed appropriate. <u>Alexander II</u>, 32 F.3d at 1235. In our remand order, we outlined a number of principles the district court might consider in its proportionality analysis, giving the district court full discretion to develop the record and make appropriate findings. <u>Id.</u> at 1235-37.

---

[2]In his brief, Alexander identifies and values the items forfeited: ten parcels of real property valued at $1,040,334.06; fifteen bank accounts totalling $5,017.47; fourteen bookstores valued at least at $2,000,000; personal property and equipment liquidated at auction and private sale for $47,297.47; 113.8 tons of "presumptively protected" magazines, videos, and novelties; 1,033 boxes of magazines, videos, and novelty items from a California warehouse; three motor vehicles valued at $12,000; and monies acquired from the RICO enterprise from the years 1985 through 1988, totalling $8,910,548.10.

In considering Alexander's argument that the forfeiture of his property constituted an excessive fine, the district court recognized this court's instruction that it must distinguish proceeds of the racketeering activity and property which facilitates or affords a source of influence over the illegal enterprise. See 32 F.3d at 1236. The forfeiture of proceeds from the illegal enterprise is not considered punishment subject to the excessive fines analysis because the forfeiture of proceeds simply deprives the owner of the fruits of his criminal activity. See id. The district court found that the real property, the $8,910,548.10 in proceeds, and the personal property, equipment, and inventory located on the premises of the forfeited real property constituted proceeds of Alexander's racketeering enterprise, and were not subject to the excessive fines analysis. The court determined that it would only include Alexander's personally held real property and business interests in the amount forfeited for the purpose of the proportionality analysis.

The district court recognized that Alexander must make a prima facie showing of gross disproportionality before the court will consider the government's counter-evidence of just proportionality. Following this court's suggestion, the district court stated that, to determine if Alexander made a prima facie showing of gross disproportionality, it must compare the extent and duration of Alexander's criminal activities with the amount of property forfeited. The court decided that Alexander had the burden to make at least a preliminary showing of the sums forfeited, and to demonstrate a disproportionality between the forfeiture and his crime. The court concluded that Alexander "entirely failed to come forward with any cognizable evidence establishing the dollar value of his holdings." The court specifically referred to the several amounts Alexander claimed to have held, varying from "$25 million," to "many millions" to "$2 million." The court pointed out that

-3-

Alexander failed to submit any evidence of the value of his business, such as a certified appraisal, audited financial statements, or any value based on a capitalization of income stream, an offer of a comparable sale, or a specific asset listing and valuation. Because the court could not calculate "base holdings," the court concluded it was impossible to determine the proportion of fines and, ultimately, determine if the forfeiture was disproportionate.

The court also commented on Alexander's lack of credibility based on discrepancies in Alexander's trial testimony and his declarations. Alexander had stated to the Supreme Court that his business was worth $25 million, but on his Chapter 7 bankruptcy schedule, he stated, under penalty of perjury, that his business was worth approximately $2 million. The court found "unworthy of belief," Alexander's valuation of his assets. The court referred to evidence that Alexander failed to keep records of receipts and that there were "vast unreported sums of money." As one example, the court recounted evidence that Alexander maintained only a personal monthly declaration of quarters he collected and counted from unmetered "peep show" vending machines, and that these records did not square with testimony from a bank employee who stated that Alexander deposited substantial amounts of quarters into different bank accounts, often retaining large amounts of cash in $50 and $100 denominations. The court stated that between the time of Alexander's conviction and the seizure of his assets, Alexander requested and received control of his business and assets and, during that time, he "secreted assets, attempted bulk sales, and engaged in . . . a series of shenanigans designed to obstruct th[e] Court's orderly processes and enrich himself before the marshal seized his inventory and equipment." Under these circumstances, the court concluded that the United States had no duty to inventory Alexander's holdings and rejected Alexander's argument that he

should be relieved of his burden to show gross disproportionality.

The district court then considered the extent and duration of Alexander's criminal activities.  The court compared Alexander's maximum consecutive sentences (171 years and statutory fines of $6,400,000) with his imposed sentence (72 months and $100,000 fine, special assessments, and costs), specifically noting that the court did not order a higher fine because of the forfeiture.  The court concluded that the imposed sentence was appropriate and Alexander failed to make any showing that the forfeiture was grossly disproportionate to his criminal activity.

Alexander now argues that the district court incorrectly conducted the proportionality analysis.  Alexander perceives five problems with the court's conclusion that he failed to make a prima facie case of disproportionality.  He argues that the court:  (1) ignored uncontroverted evidence in the record regarding the value of property forfeited; (2) misconstrued the legal and factual test applicable to the proportionality analysis; (3) erroneously excluded at least $8.9 million from the proportionality analysis; (4) erroneously focused on facts relating to the tax counts; and (5) erroneously failed to hold as a matter of due process that Alexander had met his burden of establishing a prima facie case of disproportionality.

## I.

Alexander first claims that the district court ignored uncontroverted valuation evidence.  He argues that the court failed to acknowledge the evidence of value of the United States Marshall appointed by the court to "apprise" the forfeited property, who he says valued the forfeited property at around $10,017,197.10.

Alexander stresses that this amount did not even include the entire amount of the forfeiture, as the ten million dollar figure did not include the value of the fourteen ongoing businesses and 114 tons of seized inventory.

Alexander's characterization of the affidavit is not accurate. Pursuant to a district court order, the United States Marshall Service was authorized and directed to dispose of forfeited property, not value the property.[3] The affidavit sets forth the net proceeds of the property seized, and does not "value" the seized property at anywhere near ten million dollars.[4] The affidavit contains nothing to cause us to conclude that the district court ignored valuation evidence or erred in conducting its proportionality analysis.

## II.

Alexander next contends that the district court incorrectly analyzed the proportionality question. He directs us to our remand order in which we suggest that the district court compare "the extent of the criminal activity and the quantum of property forfeited." Alexander II, 32 F.3d at 1236. He alleges that the district court added the further requirement, unsupported by the case law, of requiring him to establish the sums he originally possessed. He characterizes the district court's analysis as a comparison of the forfeiture to his net worth, not as a comparison

_____

[3]The government explains that the term "apprise" means to "advise, counsel, inform, notify, and warn," it does not mean to appraise or value.

[4]The affidavit sets forth the net proceeds the government received from disposing the property seized as a result of the forfeiture: real estate - $659,344.58; cash - $2,185.13; bank accounts - $5,017.47; and contents of businesses - $49,297.47.

of the forfeiture to his criminal activities.

The district court, following our suggestion, considered whether the forfeiture constituted an excessive fine by comparing the extent and duration of Alexander's criminal activities with the amount of property forfeited. See id. Contrary to Alexander's argument, the district court did not compare the amount of the forfeiture to Alexander's net worth. The court was simply trying to ascertain the amount forfeited by determining the amount of Alexander's property that was not the fruit of his RICO violations.

Alexander further contends that applying the inquiries articulated by United States v. Busher, 817 F.2d 1409, 1415 (9th Cir. 1987), and United States v. Sarbello, 985 F.2d 716, 721-25 (3d Cir. 1993), he has made a prima facie case of gross disproportionality.[5] As Alexander stressed in his earlier appeals, he complains that he was convicted of three RICO counts predicated on seven items of obscene materials, and the dollar value of these obscene materials was "infinitesimal" when compared to the volume of the sale of other protected expressive material. Alexander's argument essentially asks us to limit the proportionality analysis

---

[5]Alexander identifies the following factors from Busher and Sarbello as critical to the disproportionality analysis: (1) the circumstances surrounding the defendant's criminal conduct; (2) the harm suffered by the victim and the defendant's culpability; (3) the dollar volume of the loss caused, whether physical harm to persons was inflicted, threatened or risked, or whether the crime had severe collateral consequences; (4) the benefit reaped by the defendant; (5) the defendant's state of mind and motive; and (6) the degree to which the enterprise operated by the defendant was infected by criminal conduct. The Supreme Court declined to establish a multifactor test for determining when a fine is unconstitutionally excessive, leaving the lower courts free to develop their own tests. See Austin v. United States, 509 U.S. 602, 622-23 (1993). We have considered many of the factors urged by Alexander. See United States v. Bieri, 68 F.3d 232, 236 (8th Cir. 1995), cert. denied, 116 S. Ct. 1876 (1996).

-7-

to a comparison of the number of magazines and videos specifically found by the jury to be obscene to the dollar amount of the forfeiture. The Supreme Court, however, implicitly rejected this same argument:

> [Alexander] contends that forfeiture of his entire business was an "excessive" penalty for the Government to exact "[o]n the basis of a few materials the jury ultimately decided were obscene." It is somewhat misleading, we think, to characterize the racketeering crimes for which [Alexander] was convicted as involving just a few materials ultimately found to be obscene. Alexander was convicted of creating and managing what the District Court described as "an enormous racketeering enterprise." It is in the light of the extensive criminal activities which [Alexander] apparently conducted through this racketeering enterprise over a substantial period of time that the question whether the forfeiture was "excessive" must be considered.

Alexander, 509 U.S. at 559 (citations to record omitted). The district court did not err in conducting its proportionality analysis.

## III.

Alexander further contends that the district court abused its discretion and clearly erred in finding that the entire $8.9 million included in the forfeiture order[6] constituted "proceeds" of the racketeering enterprise. Alexander restates his argument presented in this and earlier appeals, attacking the forfeiture of the fourteen bookstores and theaters based on findings that three

---

[6]The district court ordered the forfeiture of $8,910,548.10 as proceeds obtained from the racketeering activity. The government contends that in light of Alexander's financial situation, including his tax liability and Chapter 7 bankruptcy, this amount is unlikely to be collected.

videotapes and four magazines were obscene.  He does not dispute that the business may have generated $8.9 million during the years 1985 through 1988; rather, his objection is to the district court's conclusion that the entire $8.9 million is proceeds and is not included in the Eighth Amendment analysis.  He suggests that the proceeds from the seven items found to be unlawful, and perhaps the multiple copies, are all that can be excluded from the proportionality analysis.

In remanding the case to the district court, we instructed that "[f]orfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity."  Alexander II, 32 F.3d at 1236.  The district court made explicit its earlier finding that the forfeiture of $8,910,548.10 constituted proceeds of Alexander's racketeering enterprise.  This amount represented proceeds which Alexander obtained directly or indirectly from his racketeering activities for the years 1985 through 1988.

We have already decided that proceeds cannot be included in the proportionality analysis.  See id.  The only question remaining is whether the forfeiture ordered constitutes an excessive fine.  We have no hesitation in concluding that the district court did not err in excluding the $8.9 million from its proportionality analysis.  The jury found this amount forfeitable as proceeds of the racketeering activity for the years 1985 through 1988.  The district court concluded that "the proceeds were inextricably tied to an enormous racketeering enterprise."  Alexander has not presented any cogent argument explaining why the jury and district court determination as to the amount of proceeds from the racketeering enterprise should not stand.

**IV.**

Alexander also argues that the district court erred by focusing on facts relating to the tax counts in concluding that the forfeiture was not excessive. He claims the non-RICO tax counts are irrelevant in evaluating gross disproportionality.

Alexander's indictment set forth the racketeering enterprise and the purpose of the enterprise, as well as the extensive means and methods that Alexander used to conduct the enterprise. The indictment incorporated allegations of the tax counts as "means and methods" by which Alexander "conducted and participated in the conduct of affairs of the enterprise." Accordingly, the court did not err in considering the entire record, including the tax counts, in deciding whether the forfeiture constituted an excessive fine.

## V.

Finally, Alexander argues that due process requires that he be relieved of his burden to show gross disproportionality because the United States Marshall made no detailed inventory or appraisal of the business's videos, magazines, and other items at the time they were seized. He contends that it is impossible for him to determine the total value of the property forfeited because the government destroyed approximately "114 tons of presumptively protected magazines and videotapes."

The district court rejected Alexander's due process argument, observing that Alexander was attempting to turn his obligation to present valuation evidence at the forfeiture hearing into a duty imposed on the Marshall to make an inventory at the time of seizure.

We see no circumstance here excusing Alexander from showing

disproportionality.   The record is replete with examples of Alexander's attempts to frustrate the valuation of his property as well as dissipate assets between the time of his conviction and the seizure of assets.   We reject Alexander's due process argument.

We affirm the judgment of the district court.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.